HANDGARDS, INC., a corporation, Plaintiff,

v.

JOHNSON & JOHNSON, a corporation, and Ethicon, Inc., a corporation, Defendants.

No. C–49451 WHO.

United States District Court, N. D. California.

April 16, 1975.

Maxwell M. Blecher, Blecher, Collins & Hoecker, Joel R. Bennett, Nancy M. Bennett, Kendrick, Netter, Orr & Bennett, Los Angeles, Cal., for plaintiff.

David F. Dobbins, Rogers & Wells, New York City, George S. Frazza, Robert M. Dunne, Dunne, Phelps & Mills, San Francisco, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

ORRICK, District Judge.

Defendants, Johnson & Johnson ("J & J") and Ethicon, Inc. ("Ethicon"), moved for summary judgment in this seven year old antitrust action, and plaintiff, Handgards, Inc. ("Handgards"), moved for an order compelling the production of documents. Upon consideration of the lengthy memoranda filed in support of and in opposition to said motions, and the oral argument heard on March 6, 1975, I have concluded that although certain of the predatory acts alleged by Handgards are unsupported in fact, there are genuine issues of material fact as to others. Accordingly, defendants' motion for summary judgment is granted in part and denied in part. Federal Rules of Civil Procedure, Rule 56(d). Plaintiff's motion to compel the production of documents is granted subject to an *in camera* inspection of the documents.

Preliminarily, it should be noted that summary judgment in antitrust actions should be employed sparingly, particularly where motive and intent are at issue. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, 464 (1962). If, under any reasonable construction of the facts in evidence and under any acceptable theory of law, the party opposing the motion would be entitled to prevail, summary judgment is improper. *Anderson v. American Automobile Association,* 454 F.2d 1240, 1242 (9th Cir. 1972); *Scooper Dooper, Inc. v. Kraftco Corp.,* 494 F.2d 840, 848 (3d Cir. 1974). If, however, the trial of the matter would develop no additional evidence which would in any way serve to alter the Court's resolution of the case, a disposition under Rule 56 is not only proper, but is mandated. *Peter J. Allen Corp. v. California Furniture Shops, Ltd.,* 344 F.Supp. 437, 441 (N.D.Cal. 1972).

Handgards represented at oral argument on the motion and in its post-hearing reply memorandum that it was not proceeding as though this case were governed by *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). This abandonment by plaintiff of its prior primary theory of recovery based on the Orsini patent is no surprise. *Walker Process* stands for the proposition that "the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." *Id.* at 174, 86 S.Ct. at 349, 15 L.Ed.2d at 249. The Supreme Court stopped short of ruling that a fraudulently obtained patent could be the basis of *per se* illegality under Section 2 of the Sherman Act, deferring such a decision until the proper vehicle arrived. *Id.,* 382 U.S. at 178, 86 S.Ct. at 350, 15 L.Ed.2d at 251. Mr. Justice Harlan, concurring, stressed that "deliberate fraud" was required by the majority, and noted that a reading of the opinion which would permit an antitrust violation to be premised on a patentee's failure to comply with one or more of the numerous technicalities inherent in the pat-

ent process "might well chill the disclosure of inventions through the obtaining of a patent because of fear of the vexations or punitive consequences of treble-damage suits." *Id.* at 180, 86 S.Ct. at 352, 15 L.Ed.2d at 253.

Handgards alleged a *Walker Process* violation in regard to the procurement of the Orsini patent, but, as noted *supra,* this contention has been abandoned. In passing, it should be noted that the Orsini infringement suit was not prosecuted in violation of *Walker Process.* Much has been said about the information contained in the various Patent Office files and whether or not the patent examiner should have been aware of certain representations to be found therein. But, a party's failure to inform the Patent Office of information in its own files does not amount to the extremely circumscribed "intentional fraud" necessary to prove an action under *Walker Process* (*Id.* 382 U.S. at 176, 86 S.Ct. at 349, 15 L.Ed.2d at 250; *Cataphote Corporation v. DeSoto Chemical Coatings, Inc.,* 450 F.2d 769, 772–773 (9th Cir. 1971)), and thus the Orsini claim would have to fall even in the absence of the express abandonment.

The complaint in this case has never contained a *Walker Process* allegation in regard to the Gerard patent. Such a contention was sought to be added in May of 1974, but Judge Wollenberg denied leave to so amend the complaint on June 25, 1974.

Handgards now largely bases its monopolization charge on the various patent infringement and other lawsuits brought on behalf of Ethicon by J & J house patent counsel. The claim is rooted in *Kobe, Inc. v. Dempsey Pump Co.,* 198 F.2d 416 (10th Cir. 1952), *cert. denied* 344 U.S. 837, 73 S.Ct. 46, 97 L.Ed. 651 (1952), and its progeny— particularly *Mach-Tronics, Incorporated v. Zirpoli,* 316 F.2d 820 (9th Cir. 1963), *Rex Chainbelt, Inc. v. Harco Products, Inc.,* 512 F.2d 993 (9th Cir. 1975), and *Prelin Industries, Inc. v. G & G Crafts, Inc.,* 357 F.Supp. 52 (W.D.Okl.1972). The Ethicon suits were purportedly brought as integral ingredients of a scheme to monopolize the disposable glove market. Other alleged aspects of the

monopoly plan are defendants' misuse of the Gerard patent through an attempt to enlarge its scope beyond that granted by the Patent Office; the accumulation by Ethicon of a series of patents; price-cutting; and, finally, full-line enforcing. The latter contention was abandoned by plaintiff prior to the hearing on the instant motion.

Handgards also alleges that Ethicon, a wholly-owned subsidiary of J & J, conspired with Sam Porter ("Porter"), a former distributor of disposable gloves, in violation of Section 1 of the Sherman Act. Finally, Handgards raised, but has since abandoned (in its memorandum opposing the motion for summary judgment), the contention that the acquisition of the Scott Company by Ethicon violated Section 7 of the Clayton Act.

Plaintiff charges that defendants attempted to create a monopoly in the disposable glove industry by accumulating a number of the relevant patents—no matter how weak or narrow—and then instituting a series of lawsuits in order to slowly litigate the competition out of business. In *Kobe, Inc. v. Dempsey Pump Co., supra,* the plaintiff obtained a monopoly in the rodless pump industry by buying up all the relevant patents. It then instituted a patent infringement action against its sole competitor, Dempsey, without ever having examined the alleged infringing product. The company then proceeded to inform its customers about the pending litigation. The Tenth Circuit affirmed the district court's finding of an antitrust violation, but noted that the result would be otherwise "if there was nothing more than the bringing of the infringement action". 198 F.2d at 425; *Rex Chainbelt, Inc. v. Harco Products, Inc., supra* at 1003.

The *Kobe* court carefully characterized its holding as one not intended to impede "free and unrestricted access to the courts". *Id.* at 424. Later decisions have sought to resolve the tension between encouraging lawsuits brought to enforce patents—monopolies sanctioned by the Constitution to courage aggressive competition—and dis-

couraging persons from bringing suits on those patents in an attempt to squelch potential competitors. See, *e. g., Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., supra; Cole v. Hughes Tool Company,* 215 F.2d 924 (10th Cir. 1954), *cert. denied,* 348 U.S. 927, 75 S.Ct. 339, 99 L.Ed. 726 (1955); *Bolt Associates, Inc. v. Rix Industries,* 1973–1 Trade Cases, ¶ 74,474 (N.D.Cal.1973); *Crown Machine & Tool Co. v. KVP–Sutherland Paper Co.,* 297 F.Supp. 542 (N.D.Cal.1968), *aff'd* 409 F.2d 1307 (9th Cir. 1969); Report of the Attorney General's National Committee to Study the Antitrust Laws (1955) at 247–248.

Despite *Kobe,* there exists a good deal of confusion over the requisite intent of the initiator of a patent infringement or related action. The problem is exacerbated in relation to this case since most of the relevant precedents feature an antitrust contention raised as a defense to a challenged patent infringement action. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., supra; Kobe, Inc. v. Dempsey Pump Co., supra; Rex Chainbelt, Inc. v. Harco Products, Inc., supra; Bolt Associates, Inc. v. Rix Industries, supra.*

The law, however, is not totally unsettled. Thus, when a lawsuit or a series of lawsuits is an integral part of a scheme to monopolize an industry, the damage the defendant in the infringement action(s) incurs in defending such action(s) is recoverable under Section 4 of the Clayton Act, even if such actions were brought with a good-faith belief in the validity of the patent. *Rex Chainbelt, Inc. v. Harco Products, Inc., supra,* at 1003; *Dairy Foods Incorporated v. Dairy Maid Products Coop.,* 297 F.2d 805, 809 (7th Cir. 1961). *Kobe* serves to stress the need for an overall scheme to monopolize with the litigation serving only as one of the predatory acts.

The bringing of a series of ill-founded patent infringement actions, in bad faith, can constitute an antitrust violation in and of itself *if* such suits are initiated or pursued with an intent to monopolize a particular industry (and, of course, the other elements of a Section 2 violation are

present). *Otter Tail Power Co. v. United States,* 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973); *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Kellogg Co. v. National Biscuit Co.,* 71 F.2d 662, 666 (2d Cir. 1934); *Bolt Associates, Inc. v. Rix Industries, supra.* This type of an antitrust violation is a very difficult one to prove. See, *e. g., Crown Machine & Tool Co. v. KVP–Sutherland Paper Co., supra.*

In their supplemental memorandum, defendants contend that permitting recovery on a theory requiring less than the deliberate fraud required by *Walker Process* would serve to overrule the Supreme Court and would subject to treble damage liability anyone who "unsuccessfully tries to enforce a patent". This contention inaccurately characterizes the precedents. Plaintiff must prove that such actions were initiated or prosecuted with the requisite unlawful motive. Moreover, while the court in *Walker Process* took pains to carefully limit its holding to deliberate common law deceit, it must be remembered that *Walker Process* was aimed at preventing monopolies created by means of fraudulent patents, while the allegation here is that a monopoly was sought to be created by means of abuse of the judicial system.

■ Applying the above to the instant case, I find that there are genuine issues of material fact as to whether:

1. Ethicon pursued various lawsuits against Handgards and its predecessors in bad faith in an effort to maintain a monopoly in the relevant market (and whether such an attempt succeeded). Bad faith in this context is defined as knowing that the particular patent was invalid because:

   a. Gerard knew of relevant prior art more than a year before the filing of his patent application; or

   b. Gerard knew that the invention was on sale more than a year prior to the filing of his application; or

   c. the Orsini patent was invalid because material information was withheld from the patent examiner.

2. The defendant-initiated lawsuits, even if brought with a good-faith belief in the validity of the patents, were an integral part of a scheme to monopolize the plastic disposable glove market. Other segments of this purported scheme may include:

   a. Gerard's attempt to enlarge the scope of his patent. *Jack Winter, Inc. v. Koratron Company, Inc.,* 375 F.Supp. 1, 71 (N.D.Cal.1974); *Triumph Hosiery Mills, Inc. v. Alamance Industries, Inc.,* 191 F.Supp. 652 (M.D.N.C.1961), *aff'd* 299 F.2d 793 (4th Cir. 1962), *cert. denied,* 370 U.S. 924, 82 S.Ct. 1566, 8 L.Ed.2d 504 (1962);

   b. Ethicon's accumulation of patents;

   c. defendant's price-cutting activities; or

   d. Ethicon causing Porter to notify the industry about pending litigation.

Several of plaintiff's contentions are unsupported in fact, and thus summary judgment as to them is granted pursuant to Rule 56(d). Handgards has failed to introduce credible evidence, to support contentions that:

1. Ethicon, as part of its alleged monopolization, conditioned its sales to Porter on his refraining from dealing in the goods of competing manufacturers;

2. Either of the defendants conspired with Porter in violation of Section 1 of the Sherman Act;

3. Defendants have perpetrated a fraud upon the courts. This contention may be read as a portion of the *Otter Tail Power Co. v. United States, supra,* allegation, and may be relevant to defendants' motive in pursuing the prior litigation; and

4. Gerard's representation to the Patent Office that he was the sole inventor was a misrepresentation. *Pointer v. Six Wheel Corporation,* 177 F.2d 153, 157 (9th Cir. 1949), *cert. denied,* 339 U.S. 911, 70 S.Ct. 570, 94 L.Ed. 1338; *Hobbs v. United States Atomic Energy Commission,* 451 F.2d 849, 864–865 (5th Cir. 1971).

Moreover, the interference proceeding between Orsini and Gerard and all that went

on therein is irrelevant to this action as it is now cast.

A totally separate issue is whether J & J can be said to have conspired with its subsidiary to violate the Sherman Act. There is no dispute that J & J house patent counsel have been intimately involved in some of the previous litigation between Ethicon and plaintiff. Handgards has even raised an issue of fact as to whether such counsel "orchestrated" the previous litigation.

 It is beyond question that a parent and its subsidiary, acting in concert against outsiders to the corporate family, constitute the requisite multiplicity of actors necessary to form a conspiracy in restraint of trade. *United States v. Yellow Cab Company,* 332 U.S. 218, 227, 67 S.Ct. 1560, 1565, 91 L.Ed. 2010, 2018 (1947); *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.,* 340 U.S. 211, 215, 71 S.Ct. 259, 261, 95 L.Ed. 219, 224 (1951); *Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 141–142, 88 S.Ct. 1981, 1985–1986, 20 L.Ed.2d 982, 991–992 (1968); *Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.,* 416 F.2d 71, 82–84 (9th Cir. 1969), cert. denied, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970); *In re Penn Central Securities Litigation,* 367 F.Supp. 1158, 1166 (E.D.Pa. 1973). I am cognizant that some commentators have questioned the wisdom of a broad application of the intra-enterprise conspiracy doctrine (*e. g.,* Handler, *Through the Antitrust Looking Glass—Twenty-First Annual Antitrust Review,* 57 Calif.L.Rev. 182, 185–187 (1969); Willis and Pitofsky, *Antitrust Consequences of Using Corporate Subsidiaries,* 43 N.Y.U.L.Rev. 20 (1968)), but on the facts before me, I, at this point in the litigation, find nothing to tempt me from departing from the precedents.

In sum, then, plaintiff has raised issues of material fact as to several of its contentions. And, while the evidence in support of plaintiff's allegations is less than overwhelming as to each purported predatory act, the Court must avoid isolating each small· point and thereby ignoring a potentially unlawful scheme. *Monolith Portland Midwest Co. v. Kaiser Aluminum & C. Corp.,* 407 F.2d 288, 295 n. 10 (9th Cir. 1969).

In accordance with the above, defendants' motion for summary judgment is granted in part and denied in part. Within ten days from the date of entry of this order, defendants shall serve upon the Court for *in camera* inspection the documents requested by plaintiff in its motion to compel.