**CHAMPION INTERNATIONAL CORPORATION, Plaintiff,**

v.

**INTERNATIONAL PAPER COMPANY, Defendant.**

**Civ. A. No. C76–1253A.**

United States District Court, N. D. Georgia, Atlanta Division.

March 28, 1980.

Thomas C. Shelton, John S. Pratt, Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., John J. Kelton, Robert E. Kosinski, Watson, Leavenworth, Kelton & Taggart, New York City, Evelyn M. Sommer, Stamford, Conn., for plaintiff Champion Intern. Corp.

John C. Staton, Jr., King & Spalding, Atlanta, Ga., Charles B. Smith, Beverly B. Goodwin, Russell J. Barron, Fish & Neave, New York City, Walter T. Zielinski, Richard J. Ancel, Intern. Paper Co., New York City, for defendant International Paper Co.

## ORDER

### INTRODUCTION

SHOOB, District Judge.

This case is before the Court on defendant International Paper Company's motion to compel production of documents pursuant to Fed.R.Civ.P. 37. The parties have stipulated that for the purpose of ruling on this motion, the sole question of law for the Court is

> Whether Plaintiff, by its voluntary production of 13 documents (copies of five of which are attached hereto as Exhibits E, F, G, N and Q) has waived its asserted attorney-client privilege with respect to the subject matter of Defendant's alleged infringement of the patents in suit.

Joint Submission of the Parties Pursuant to January 31, 1979 Order, page 1.

The classic statement of the attorney-client privilege is found in *United States v. United Shoe Machinery Corporation*, 89 F.Supp. 357, 358–59 (D.Mass.1950).

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

It should be noted that defendant International Paper Company (IP) is in the position of asserting the attorney-client privilege on behalf of plaintiff Champion International Corporation (CI). IP argues that CI, by its disclosure of documents within the attorney-client privilege, has waived its privilege as to "all documents that relate to the subject of IP's alleged infringement of the patents in suit, and that are now being withheld by Champion on the grounds of attorney-client privilege."[1] Joint Submission, *supra*, page 3. Plaintiff CI, resisting defendant's motion, argues first, that the documents actually produced are not within the scope of the attorney-client privilege and thus no waiver occurred;[2] and second, that even if the documents voluntarily produced were within the scope of the attorney-client privilege, no waiver has occurred.

For the purpose of ruling on this motion, the Court assumes, without deciding, that the documents produced (and those sought by defendant) are within the scope of the privilege. Movant IP so argues, *see* Joint Submission, *supra*, page 8. Only the sufficiency of plaintiff's second defense to the motion (that is, that no waiver has occurred) is at issue here.[3]

The 13 documents produced by CI, which IP claims waived CI's attorney-client privilege, were produced in response to IP's request for production of documents identified in CI's response to defendant's interrogatory # 50. That interrogatory requested plaintiff to

> [i]dentify each test which caused plaintiff to form an opinion that defendant had infringed or was infringing the '678 patent and each document which refers or relates to such test or tests.

The 13 documents produced by plaintiff[4] communicate technical information, such as graphs, charts, filmstrips, lab reports, mi-

---

1. If the Court finds CI to have waived its privilege, waiver would not extend so far. The better rule is that the voluntary production of one or more *privileged* documents passing between a certain attorney and the client discussing a certain subject waives the privilege as to all communications between the same attorney and the same client on the same subject made *before* the privileged document was voluntarily waived. To establish a waiver of all later generated privileged documents would effectively disallow the parties from forever thereafter discussing the same subject matter in any other privileged context.
   *Duplan Corporation v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1191 (D.S.C.1975) (emphasis in original). *See also* 8 *Wigmore, Evidence* § 2327, at page 638, example # 4 (McNaughton rev. 1961).

2. The voluntary waiver by a client . . . of one or more *nonprivileged* documents passing between the same attorney and the same client discussing the same subject does not waive the *privileged* communications between the same attorney and the same client on the same subject.
   *Duplan Corporation, supra*, at page 1191 (emphasis in original).

3. Thus, the Court need not decide at this point what test to apply in determining whether communications from corporate personnel to corporate counsel fall within the scope of the corporation's attorney-client privilege. Apparently, the question of whether the "control group test," *see City of Philadelphia v. Westinghouse Electric Corporation*, 210 F.Supp. 483 (E.D.Pa. 1962), or the "subject matter test," *see Harper and Row Publishers, Inc. v. Decker*, 423 F.2d 487 (7th Cir. 1970), aff'd mem. by an equally divided Court, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971), or another variation of the latter, *see Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977), applies, has not yet been addressed by the Fifth Circuit or by any district court in this Circuit. *See Holiday Inns, Inc. v. Fay*, 451 F.2d 343 (5th Cir. 1971). *See also Annotation*, Attorney-Client Privilege in Federal Courts: Under What Circumstances Can Corporation Claim Privilege for Communications From Its Employees and Agents to Corporation's Attorney, 9 A.L.R.Fed. 685 (1971).
   Nor need the Court determine at this time the difficult question of how to apportion the burden of showing the existence of the privilege when the party seeking discovery is asserting that the privilege exists, and has been waived by the party avoiding discovery. *See Camco, Inc. v. Baker Oil Tools, Inc.*, 45 F.R.D. 384, 387 (S.D.Tex.1968), and *Honeywell, Inc. v. Piper Aircraft Corporation*, 50 F.R.D. 117, 120 (M.D. Pa.1970).

4. The parties have stipulated that the five documents attached to the motion (Exhibits E, F, G, N and Q) are 'illustrative' of the thirteen for the purpose of this order. Joint Submission, *supra*, page 2.

crograph profiles, and other data, from technical personnel to corporate attorneys. These test results and other technical information, taken by themselves, are clearly not privileged. The raw data provided by plaintiff merely provided the basis on which the (presumed) privileged communications were made. They were produced pursuant to Rule 34 as properly discoverable under Fed.R.Civ.P. 26(b). That the test results were sent to plaintiff's attorney cannot make them privileged, for "if a document would be subject to an order for production if it were in the hands of the client it will be equally subject to such an order if it is in the hands of his attorney." *McCormick, Handbook of the Law of Evidence,* § 89, at page 185 (Cleary rev. 2d ed. 1972). *See also* 2 *Weinstein's Evidence* ¶ 511[02] at pages 511–5, ¶ 1.

It is, rather, the letters of transmittal which, for the purpose of this order, are considered privileged. The letters were written by three of plaintiff's technical personnel: Mr. R. C. Ihde, a co-inventor, Mr. K. P. Thompson, the other co-inventor, and Mr. T. Hart, assistant to Mr. Thompson. The letters were all written to attorneys for CI.

It is clear to the Court from a reading of these letters that their primary purpose was to identify and explain the attached technical information. (For each of the five documents, the technical information comprises the bulk of the communication.) The letters also contain conclusory statements by the writers to the effect that defendant was apparently "profile-coating"[5] its gable-topped milk and juice cartons. Two of the letters go further and touch upon patent infringement.

In the last paragraph of a letter from Mr. R. C. Ihde to Mr. Dan Worth, Esq., dated December 19, 1969, Mr. Ihde stated: "This is a direct infringement of our patent 3,421,678." Further, in a letter dated Janu-

ary 10, 1972 from Mr. K. Thompson to Mr. Worth, Mr. Thompson stated: "These films again illustrate I.P.'s use of the Profile Coating approach and are for your use if you desire to pursue our patent." These letters requested no legal advice, and none was given in response to them. *See* Affidavit of Robert E. Kosinski at page 2. Nonetheless, for the purpose of ruling on defendant's motion to produce, these letters of transmittal are presumed to fall within the scope of the privilege.

## DISCUSSION

In adopting the Federal Rules of Evidence, the Congress decided upon a very general provision to deal with privileges. Fed.R.Evid. 501 provides in pertinent part:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

In providing the courts with such a general rule, the Congress rejected the more specific rules of privilege embodied in the Supreme Court Standards. Nonetheless, these standards are still valuable to this Court in its deliberations.

Supreme Court Standard 511—Waiver of Privilege by Voluntary Disclosure[6] provides: ·

> A person upon whom these rules confer a privilege against disclosure of the confidential matter or communication waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This rule does not apply if the

5. Both patents on which plaintiff sues relate to gable-topped cartons. Patent 3,421,678 relates to a thermoplastic profile-coated carton. Patent 3,976,527 relates to a method of production where blank cartons are profile-coated, scored

and then cut. Consolidated Status Statement, September 20, 1979, page 1.

6. Again, it is presumed that the attorney-client privilege applies.

disclosure is itself a privileged communication.

Uniform Rule of Evidence 510 (1974) is to the same effect.

■ It should be noted at the outset that intent to waive the privilege is not necessary for waiver. Mr. Kosinski's averment that he did not consider these communications to be within the privilege has no effect. *See* Affidavit of Mr. Robert E. Kosinski, page 1. Despite occasional indications to the contrary, *see International Business Machines Corporation v. Sperry Rand Corporation*, 44 F.R.D. 7, 13 (D.Del.1967), the better and more widely accepted rule is that the disclosure need only be voluntary. *See* Supreme Court Standard 511. "Traditionally, waiver is described as intentional relinquishment of a known right. *Johnson v. Zerbst*, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461] (1938). However, voluntary disclosure, regardless of knowledge of the existence of the privilege, deprives a subsequent claim of privilege based on confidentiality of any significance." *McCormick, Evidence, supra*, § 93 at page 194, note 14. "A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation." 8 *Wigmore, supra*, § 2327, at page 636. *See also* 2 *Weinstein's Evidence, supra*, ¶ 511[01], at pages 511–2 and 511–6.

Fed.R.Evid. 501 requires this Court to construe the federal common law of attorney-client privilege, and waiver thereof, "in the light of reason and experience." This reason and experience "places on the federal courts the responsibility of examining the policies behind the federal common law privileges so as to alter or amend them when reason and experience demand." *United States v. Cameron*, 556 F.2d 752, 756 (5th Cir. 1977). These principles of construction apply with equal force to the federal common law waiver rules. It is appropriate then for this Court to consider the purposes behind the attorney-client privilege, and waiver of that privilege, in relation to the facts of this case.

"The purpose of the attorney-client privilege is to promote freedom of consultation between client and legal advisors without apprehension of subsequent compelled legal disclosure." *International Telephone and Telegraph Corporation v. United Telephone Company of Florida*, 60 F.R.D. 177, 185 (M.D.Fla.1973). Rarely, wrote Wigmore, "has any question been made of the soundness of this privilege." 8 *Wigmore, supra*, § 2291 at page 549.

But the privilege has its limits, and one of these is waiver. "[T]he privilege was intended as a shield, not a sword. . . . [A] party may not insist upon the protection of the privilege for damaging communications while disclosing other selected communications because they are self-serving." *International Telephone and Telegraph Corp., supra*, at page 185. "Voluntary disclosure of part of a privileged communication is a waiver as to the remainder of the privileged communication about the same subject." *Handgards, Inc. v. Johnson and Johnson*, 413 F.Supp. 921, 929 (N.D.Cal. 1975). *See also United States v. Aronoff*, 466 F.Supp. 855, 862 (S.D.N.Y.1979) (waiver prevents a holder of the privilege from making limited assertions about privileged communications, there being "a serious danger that his assertions are false or misleading.").

Of course, the federal common law rule of waiver, as found in the cases and in Supreme Court Standard 511, should be read with a view to what the privilege protects, *see* 2 *Weinstein's Evidence, supra*, ¶ 511[01] at page 511–2, and read consistently with the liberal spirit of modern federal discovery rules.

■ In the instant case the policy behind the attorney-client privilege is served by plaintiff CI's assertion of the privilege. For a large, technically-oriented corporation, the confidentiality the privilege provides is indispensable. The corporation, based on communications among technical personnel, corporate management and corporate counsel, makes the decision whether or not to initiate patent litigation. In the instant case, raw data was transmitted from technical personnel to corporate counsel. Transmittal letters, in some instances,

may have revealed certain privileged communications. Nevertheless, these communications represent merely unsolicited legal opinions and conclusions by non-lawyers. On that basis, defendant seeks to force plaintiff to disclose numerous other clearly privileged documents.

"An important consideration in assessing the issue of waiver is fairness." *Handgards, supra,* at page 929. An element of fairness is proportionality. Can the disclosure of a very slight amount of privileged material, produced in a spirit of openness in discovery, be the basis for a waiver of a large amount of other privileged material? As the Fifth Circuit Court of Appeals phrased it, the question is "whether the position taken by the party goes so far into the matter covered by the privilege that fairness requires the privilege shall cease even when, subjectively, he never intended that result." *United States v. Woodall,* 438 F.2d 1317, 1324 (5th Cir. 1970). This Court finds that the slight disclosure the Court presumes plaintiff to have made is consistent with the assertion of the attorney-client privilege, and that no waiver has been made.[7] No significant part of any communication privileged due to attorney-client confidence has been disclosed. *See* 2 *Weinstein's Evidence, supra,* ¶ 511[02], at page 511–7. Professor Wigmore wrote:

> There is always also the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or to disclose, but after a certain point his election must remain final.

8 *Wigmore, supra,* § 2327, at page 636. Plaintiff's disclosure of a minimal amount of (presumed) privileged material, made inadvertently as a mere appendage to discoverable technical material in the course of exhaustive discovery and in the spirit of openness, cooperation and reason which the Federal Rules of Civil Procedure seek to achieve, does not constitute a waiver as to other privileged material.

## CONCLUSION

For the reasons set forth above, defendant IP's motion to compel is DENIED. Pursuant to the parties' stipulation filed November 9, 1979, the Court DEFERS consideration of defendant's later motion to compel.

---

**7.** The Department of Justice criticized Supreme Court Standard 511 on the ground that the exception to the waiver principle (i. e., waiver occurred whenever a significant part of the privileged matter was disclosed *except* when the disclosure was made during other communications also privileged) was too narrow. The Department recommended that in order to grant the trial judge sufficient flexibility, the rule should be amended so that waiver could occur if the holder of the privilege disclosed any significant part of the privileged matter *"under such circumstances that it would be inappropriate to allow the claim of privilege."* (Amended portion italicized.) 2 *Weinstein's Evidence, supra,* ¶ 511[02], at page 511–03, 04.

Weinstein concludes that Standard 511, as stated, is probably flexible enough to reach that result. *Id.* at page 511–04. This Court agrees with that conclusion.