SUBURBAN SEW 'N SWEEP, INC., Howard Perk and Bruno E. Perk, Plaintiffs,

v.

SWISS–BERNINA, INC., and Fritz Gegeauf, Ltd., Defendants.

No. 80 C 2526.

United States District Court, N. D. Illinois, E. D.

Aug. 24, 1981.

Edward L. Foote, Kurt L. Schultz, Earl Pollock, Chicago, Ill., for defendants.

## Memorandum

LEIGHTON, District Judge.

This review of a Magistrate's order entered in discovery proceedings presents an interesting and, to this court's knowledge, as yet undecided question: whether documents which would otherwise be privileged as confidential attorney-client communications are no longer so privileged when recovered by a third party from a trash container. The relevant part of the Magistrate's order, which plaintiffs object to, provides in its entirety that:

> Defendants' objections to interrogatories relating to documents removed from trash by plaintiffs are SUSTAINED. All documents (and copies thereof) so removed by plaintiffs shall be returned to defendants' counsel and shall not be used by any party for any purpose in this litigation.

Most of the documents recovered were not privileged communications, and so the court must also determine whether there is any basis for excluding those documents from evidence. The relevant facts, which are not in dispute, are as follows.

### I

Plaintiffs Suburban Sew 'N Sweep, Inc. and Howard Perk are operators of retail stores which sell sewing machines and other products manufactured by defendant Fritz Gegauf, Ltd., imported and distributed by defendant Swiss-Bernina, Inc. In 1977, they began to suspect that defendants were engaging in unlawful price discrimination and conspiring to restrain trade in violation of the Clayton Act, 15 U.S.C. §§ 12 *et seq.*, and the Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.* Allegations arising from these suspicions form the basis of plaintiffs' complaint in this case. In order to investigate what they suspected, plaintiffs developed a practice of searching the trash dumpster located in the parking lot of the office building where Swiss-Bernina rented of-

Lee A. Freeman, Jr., Daniel A. Clune, Albert F. Ettinger, Chicago, Ill., for plaintiffs.

fices. This search for and retrieval of documents began in August of 1977, and continued for over two years. Hundreds of relevant documents were obtained.

During the year 1979 the president of Swiss-Bernina sent several confidential letters to Swiss-Bernina's corporate counsel. After the letters were mailed, the handwritten drafts were placed in the waste basket. The waste baskets of all Swiss-Bernina personnel were emptied by an employee into a large trash container, which was then emptied into a trash dumpster located near Swiss-Bernina's receiving dock. The dumpster was used only by Swiss-Bernina, and its trash collected by a company with which it had a contract; other occupants of the building used separate trash recepticles. The handwritten copies of the letters were ultimately recovered from the trash dumpster by plaintiffs. It is uncontested that defendants expected these communications to remain confidential, and that, if plaintiffs had not discovered them, they would fall within the attorney-client privilege.

Plaintiffs filed this suit in May of 1980. In July, they served interrogatories on defendants which asked for transcriptions of and particular information concerning some of the documents recovered from the trash dumpster. Defendants answered most of the interrogatories, but refused to provide further information about four documents, which they claimed were protected by the attorney-client privilege. Plaintiffs sought an order compelling answers to the interrogatories before the Magistrate, who is supervising pretrial proceedings.

Instead of compelling answers, the Magistrate entered an order, quoted above, sustaining defendants' objections, requiring return of all documents recovered from defendants' trash, and excluding use of any of the documents as evidence. Though no reasons were given in support of this order, the Magistrate apparently concluded that plaintiffs had acted so improperly in searching and retrieving documents from the trash dumpster that an exclusionary rule should be applied to prevent use of any documents so obtained. Plaintiffs filed timely objections to the Magistrate's order, and it is now properly before the court for review.

## II

Defendants do not seriously argue that the Magistrate's order should be upheld as to the documents which were not otherwise privileged. Initially, it must be noted that these documents could normally be obtained through discovery anyway. Thus, for the exclusionary rule designed by the Magistrate to have any significant deterrent effect, it would have to be expanded to preclude plaintiffs from seeking any discovery, or at least any discovery stemming from knowledge obtained from the documents. Virtually the whole litigation might have to be barred as "fruit of the poisonous tree". It requires little imagination to see that such a broad exclusionary rule cannot be justified in the circumstances of this case.

The courts have nearly unanimously held that property placed in the garbage is no longer protected by the Fourth Amendment. Such property is considered abandoned, and the owner no longer retains a "reasonable expectation of privacy" protected by the Fourth Amendment from unreasonable search and seizure. *See United States v. Cella,* 568 F.2d 1266 (9th Cir. 1972); *United States v. Colbert,* 474 F.2d 174 (5th Cir. 1973); *United States v. Mustone,* 469 F.2d 970 (1st Cir. 1972); *United States v. Dzialek,* 441 F.2d 212 (2nd Cir. 1971); *Friedman v. United States,* 347 F.2d 697 (8th Cir.) *cert. den.* 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354 (1965); *People v. Huddleston,* 38 Ill.App.3d 277, 347 N.E.2d 76 (1976). Furthermore, even if defendants arguably retained a reasonable expectation of privacy in the contents of their own trash container, *see United States v. Kahan,* 350 F.Supp. 784 (S.D.N.Y.1972), *aff'd in part and rev'd in part,* 479 F.2d 290 (2nd Cir. 1973), *rev'd* 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974), it is elementary that the Fourth Amendment and its accompanying exclusionary rule only apply to conduct of or attributable to the government, and normally do not apply in civil cases. *N.L.*

*R.B. v. South Bay Daily Breeze*, 415 F.2d 360 (9th Cir. 1969), *cert. den.* 397 U.S. 915, 90 S.Ct. 919, 25 L.Ed.2d 96 (1970); *see Securities and Exchange Commission v. OKC Corp.*, 474 F.Supp. 1031 (N.D.Tex.1979); *Annot.*, 5 A.L.R.3d 670 (1966).

■ An exclusionary rule, by definition, detracts from the vital fact finding task of the judicial system. Such a rule cannot be lightly developed or applied, but rather must be justified by even greater interests than these truth seeking responsibilities of our system of justice. Protection of Fourth Amendment rights constitutes such an over-riding interest. However, defendants' Fourth Amendment rights were not violated in this case, and deterring private citizens from committing what was at most a common law tort, or trespass or theft, is not such an over-riding interest. There are other adequate criminal sanctions and civil remedies to prevent such conduct. Accordingly, that part of the Magistrate's order which applies to documents which were not within the attorney-client privilege must be reversed.

II

Rule 26(b)(1) of the Federal Rules of Civil Procedure exempts from discovery materials which are privileged. Defendants contend that they should not be compelled to answer interrogatories concerning the four letters written by the president of Swiss-Bernina to its corporate counsel because these letters fall within the attorney-client privilege. Plaintiffs contend that the privilege no longer applies to the documents, either because their abandonment constitutes waiver or simply because the documents are no longer confidential, leaving nothing to protect.

In a federal question case, such as this one, evidentiary privileges are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501. Thus, though state privilege law may be considered, resolution of the issue and adoption of a rule are ultimately decisions of federal law. *Lewis v. United States*, 517 F.2d 236 (9th Cir. 1975); *see In re Grand Jury Proceedings*, 517 F.2d 666 (5th Cir. 1975).

■ The purpose of the attorney-client privilege is to promote complete disclosure of information between client and attorney. The privilege furthers this purpose by removing the fear of subsequent compelled legal disclosure of the information. Nevertheless, the privilege stands in derogation of the public's right to every person's evidence, and is, an obstacle to the investigation of truth. A court must balance the possibility that the privilege indirectly promotes free and honest communication with the policy of liberal discovery to enhance the search for truth. For these reasons, the privilege must be strictly construed. *In re Grand Jury Investigation*, 599 F.2d 1224 (3rd Cir. 1979); *In re Horowitz*, 482 F.2d 72 (2d Cir. 1973); *Champion International Corp. v. International Paper Co.*, 486 F.Supp. 1328 (N.D.Ga.1980); *Barr Marine Products Co., Inc. v. Borg-Warner Corp.*, 84 F.R.D. 631 (E.D.Pa.1979); *see* 8 Wigmore on Evidence § 2291 (McNaughton rev. 1961).

There is considerable diversity in the ways that courts and commentators approach and determine when an otherwise privileged communication loses its privilege. In particular, relationship of the principle that the privilege may be waived to the requirement that the privileged information be maintained in confidence is uncertain. In some circumstances, the failure to maintain confidence itself is held to constitute waiver, while in others it seems that the two considerations are independent, and that waiver must be intentional or disclosure voluntary before the privilege will no longer apply. Nevertheless, whether discussed in terms of waiver or loss of confidentiality,[1] the privilege does not apply in

---

1. In this case confidentiality is the more appropriate focus since it cannot be said that defendants waived the privilege in any conventional sense of the term. If the privilege was waived, the waiver would have to be implied from their failure to protect the privilege by maintaining the confidentiality of the documents.

certain circumstances when a third party has obtained the information.

 Thus, the privilege no longer applies when the information is communicated in the presence of a third party, *Connecticut Mutual Life Insurance Co. v. Shields,* 18 F.R.D. 448 (D.N.Y.1955), unless that party's presence does not indicate lack of intent to keep the communication confidential, *United States v. Bigos,* 459 F.2d 639 (1st Cir.), *cert. den.* 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972); *see People v. Decina,* 2 N.Y.2d 133, 157 N.Y.S.2d 588, 138 N.E.2d 799 (1956). Similarly, the privilege no longer applies if the information is later voluntarily disclosed to a third party. *See Champion International Corp. v. International Paper Co.,* 486 F.Supp. 1328 (N.D.Ga.1980); *Barr Marine Products Co. v. Borg-Warner Corp.,* 84 F.R.D. 631 (E.D.Pa.1979); *Herbert v. Lando,* 73 F.R.D. 387 (S.D.N.Y.), *remanded* 568 F.2d 974 (2d Cir. 1977), *rev'd* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979); *In re Penn Cent. Commercial Paper Litigation,* 61 F.R.D. 453 (S.D.N.Y.1973).

Even if the disclosure is inadvertent, the privilege may no longer apply in varied circumstances.[2] The most important of these circumstances for present purposes are the bystander cases. Under this doctrine, even inadvertent communication to third parties, such as bystanders or eavesdroppers, destroys the privilege, at least where the eavesdropping is not surreptitious and the attorney and client have made little effort to insure that they are not overheard. *State v. Vennard,* 159 Conn. 385, 270 A.2d 837 (1970), *cert. den.* 400 U.S. 1011, 91 S.Ct. 576, 27 L.Ed.2d 625 (1971) (police officer who overheard conversation in police station may testify, where no evidence indicated that defendant sought to insure confidentiality of the communication); *Schwartz v. Wenger,* 267 Minn. 40, 124 N.W.2d 489 (1963) (third person who overheard conversation in public corridor, without resort to surreptitious methods, may testify); *People v. Castiel,* 153 Cal. App.2d 653, 315 P.2d 79 (1957) (third person openly present who overhears may testify); *Clark v. State,* 159 Tex.Cr.R. 187, 261 S.W.2d 339, *cert. den.* 346 U.S. 855, 74 S.Ct. 69, 98 L.Ed. 369 (1953) (telephone operator may testify to contents of otherwise privileged conversation).

The justification for these decisions is that the nature of the transaction and the surrounding circumstances are inconsistent with the notion that the communication was intended to be confidential.[3] This justification also underlies decisions holding that if otherwise privileged documents are kept in a place where third parties normally have access to them, the privilege does not apply. *Jarvis, Inc. v. American Telephone & Telegraph Co.,* 84 F.R.D. 286 (D.C.Colo. 1979) (documents kept in files routinely viewed by third parties not privileged); *In re Horowitz,* 482 F.2d 72 (2nd Cir.), *cert. den.* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973) (failure to take affirmative action to maintain confidence of documents stored in accountant's office destroys privilege); *In re Victor,* 422 F.Supp. 475 (S.D.N.Y.1976) (papers left in public hallway for delivery to attorney not privileged).

These cases cannot be easily summarized or reconciled, but do reveal that the privilege is not easily invoked and is easily destroyed. Generally, it may be said that

---

**2.** *See, e. g., Weil v. Investment/Indicators, Research & Management,* 647 F.2d 18 (9th Cir. 1981); *In re Grand Jury Investigation of Ocean Transp.,* 604 F.2d 672 (D.C.Cir.), *cert. den.* 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979); *Transamerica Computer Co. v. International Business Machines Corp.,* 573 F.2d 646 (9th Cir. 1978); *First Wisconsin Mortgage Trust v. First Wisconsin Corp.,* 86 F.R.D. 160 (E.D. Wisc.1980); *Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136 (D.C.Del.1977); *Underwater Storage, Inc. v. United States Rubber Co.,* 314 F.Supp. 546 (D.D.C.1970).

**3.** As discussed below, the traditional rule effectively presumed that if the parties to a communication intended it to be and remain confidential, they could protect its confidentiality. Accordingly, even where the eavesdropper acted surreptitiously or the communication was stolen, and the parties reasonably expected that it was confidential, the privilege was considered destroyed. *See* 97 C.J.S., Witnesses § 290; 81 Am.Jur., Witnesses § 187; Annot., 96 A.L.R.2d 125 (1964).

since the theoretical predicate of the privilege is to protect confidentiality, when the parties to the communication themselves do not intend the communication to be confidential or do not take reasonable steps to insure and maintain its confidentiality, the privilege does not apply or is vitiated. However, none of these cases consider circumstances quite like those presented in the case before the court. Here, the documents were not simply voluntarily or inadvertently disclosed; they were taken, though from an area whose public or private status for these purposes is uncertain. This case thus bears some similarity to the situations in which the information is involuntarily disclosed.

Though less frequently presented to the courts, this situation has engendered considerable comment in the treatises. The traditional rule, on which the bystander and eavesdropper cases noted above rely, placed near absolute responsibility for maintaining confidentiality on the parties to the communication. The underlying principle is well summarized by Wigmore: .

> The law provides subjective freedom for the client by assuring him of exemption from its processes of disclosure against himself or the attorney or their agents of communication. This much, but no more, is necessary for the maintenance of the privilege. Since the means of preserving secrecy of communication are largely in the client's hands and since the privilege is a derogation from the general testimonial duty and should be strictly construed, it would be improper to extend its prohibition to third persons who obtain knowledge of the communications.

8 Wigmore on Evidence § 2326 (McNaughton rev. 1961); see Id. § 2325.

Under this rule, the privilege does not extend to prevent third parties who are not agents of the parties to the communication from testifying, with the result that a purloined letter, a stolen document, or a surreptitiously overheard conversation are not privileged. McCormick, Evidence § 75 (2nd Ed. 1972). However, as McCormick points out:

> Perhaps these incidental hazards may have been thought so remote as not to be likely to discourage disclosure; simple eavesdropping could be guarded against by taking simple precautions. With the advent of more sophisticated techniques for invading privacy in general and intercepting confidential communications in particular, the picture changed and a very different concept of the eavesdropper emerged. As a consequence . . . statutes and rules defining privileges began to include provisions entitling the holder to prevent anyone from disclosing a privileged confidential communication. *Id.*

One such provision is Rule 503 of the Proposed Federal Rules of Evidence which were prescribed and approved by the Supreme Court. Though Congress ultimately adopted a general rule concerning all privileges, Fed.R.Evid. 501, the rules proposed by the Supreme Court are considered a comprehensive guide to the law of privileges, providing valuable standards for the courts. *Transamerica Computer Co., Inc. v. International Business Machines Corp.*, 573 F.2d 646 (9th Cir. 1978); *Champion International Corp. v. International Paper Co.*, 486 F.Supp. 1328 (N.D.Ga.1980); *United States v. King*, 73 F.R.D. 103 (E.D.N.Y.1976).

The rule proposed by the Supreme Court provided that:

> (a) . . . (4) A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.
>
> (b) . . . A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications. . . .

Proposed Rule 503(a)(4), (b). The advisory committee notes specifically reject the former rule, adhered to by Wigmore.[4] Com-

---

4. The advisory committee notes state that: "The requisite confidentiality of communication is defined in terms of intent. A communication made in public or meant to be relayed to

mentators, noting that "(w)hile it may perhaps have been tolerable in Wigmore's day to penalize a client for failing to achieve secrecy, such a position is outmoded in an era of sophisticated eavesdropping devices against which no easily available protection exists", have endorsed the Supreme Court view, and rejected the older rule. 2 Weinstein's Evidence ¶ 503(b)[2] (1980); *see* 3 Jones on Evidence § 21:14 (1972); Uniform Rules of Evidence, Rule 26.

This "modern trend" was recognized and applied in *In re Grand Jury Proceedings Involving Berkley & Co.*, 466 F.Supp. 863, 869 (D.Minn.1979). The court initially held that documents stolen by a client's employee were within Wigmore's principle concerning involuntary disclosures and thus not privileged. On motion to reconsider, the court applied "modern precedent" and held the documents privileged. *Id.* at 869.

Nevertheless, "allowing the client to invoke the privilege to prevent testimony by eavesdroppers does not ... in any way reduce the client's need to take all possible precautions to insure confidentiality." 2 Weinstein's Evidence ¶ 503(b)[2]. Nor does the new rule alter the well established principle that the privilege is to be strictly confined. The case before the court must be distinguished from the involuntary disclosure cases because the documents were not taken from some place where defendants had put them for safekeeping, diligently trying to safeguard their confidentiality, but rather were taken from defendants' garbage. This case lies between the inadvertent disclosure cases, where the information is transmitted in public or otherwise clearly not adequately safeguarded, and the involuntary disclosure cases, where the information is acquired by third parties in spite of all possible precautions.

Thus, review of the cases, and particularly of the evolving rule with respect to eavesdroppers, reveals that the privilege is not simply inapplicable any time that confidentiality is breached, as plaintiffs claim, and that the relevant consideration is the intent of the defendants to maintain the confidentiality of the documents as manifested in the precautions they took.[5] In determining whether the precautions taken were adequate, two considerations are paramount: (1) the effect on uninhibited consultation between attorney and client of not allowing the privilege in these circumstances; and (2) the ability of the parties to the communication to protect against the disclosures.

■ Though this case presents a very close question, the court concludes that consideration of these factors requires that the privilege not be applied to these documents. The likelihood that third parties will have the interest, ingenuity, perseverance and stamina, as well as risk possible criminal and civil sanctions, to search through mounds of garbage in hopes of finding privileged communications, and that they will then be successful, is not sufficiently great to deter open attorney-client communication. Furthermore, if the client or attorney fear such disclosure, it may be prevented by destroying the documents or rendering them unintelligible before placing them in a trash dumpster.[6] While requiring this de-

outsiders or which is divulged by the client to third persons can scarcely be considered confidential. The intent is inferable from the circumstances. Unless intent to disclose is apparent, the attorney-client communication is confidential. Taking or failing to take precautions may be considered as bearing on intent.... Substantial authority has in the past allowed the eavesdropper to testify to overheard privileged conversations and has admitted intercepted privileged letters. Today, the evolution of more sophisticated techniques of eavesdropping and interception calls for abandonment of this position. The rule accordingly adopts a policy of protection against these kinds of invasion of the privilege." (citations omitted).

5. It should be noted that the fact that the documents would likely be considered abandoned for purposes of the Fourth Amendment, that defendants probably did not have a reasonable expectation of privacy sufficient to retain a property interest, provides only some, not dispositive, indication that defendants did not take sufficient precautions or reasonably expect that the documents would remain confidential for purposes of the attorney-client privilege.

6. It was revealed at oral argument that defendants now have a paper shredder.

gree of precaution may seem extreme, if the parties feel that the likelihood of disclosure is sufficiently great, the precautions may be justified, and it is within their power to decide what precautions to take, and so to protect against disclosure. Accordingly, that part of the Magistrate's order pertaining to the documents allegedly protected by the attorney-client privilege must also be reversed.

The portion of the Magistrate's order issued November 14, 1980, concerning the documents recovered by plaintiffs from defendant's trash is hereby reversed in its entirety. Defendants are directed to comply with the discovery requests.