(2) the employee making the communication did so at the direction of his or her corporate superior;
(3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;
(4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;
(5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.
Southern Bell Tel. & Tel. Co. , 632 So.2d at 1383.
Plaintiffs advance two main arguments in support of their position that the discovery sought cannot be withheld under the attorney-client privilege. First, Plaintiffs contend that the privilege does not apply because only two withheld items were prepared or sent by an attorney. [D.E. 73]. And with respect to those two communications, Plaintiffs argue that they should still be produced because there is no indication that the primary purpose was to solicit legal advice. As support, Plaintiffs rely on the Florida Supreme Court's decision in Southern Bell , where the Court found that investigative audits, panel recommendations, and statistical analysis were not communications for purposes of the attorney-client privilege. See Southern Bell Tel. & Tel. Co. , 632 So.2d at 1384-87. Plaintiffs claim that the only items that the attorney-client privilege protected in that case were statements made from Southern Bell employees directly to counsel. Because communications in this case fail to meet that standard, Plaintiffs conclude that their motion to compel must be granted.
Second, Plaintiffs argue that the presence of counsel in an email is no basis to automatically withhold items under the attorney-client privilege because Defendants failed to show that the primary purpose of the communication was to render legal advice. See In re Seroquel Prod. Liab. Litig. , 2008 WL 1995058, at *7 (M.D. Fla. May 7, 2008) ("No misconception seems to be more common ... than the belief that if a document or draft has been through the hands of an attorney, it thereby automatically becomes enshrouded in privilege's veil of secrecy ... Nothing is further from reality Insulation from discovery cannot be so readily or fraudulently obtained."). Making matters worse, Plaintiffs claim that Defendants' privilege log includes bare assertions of privilege that-if found to be sufficient-would undermine the decision in Southern Bell because corporations could easily sidestep their discovery obligations and impede the truth-finding process.
In response, Defendants argue that Plaintiffs' motion lacks merit because there is no need for a communication to include a lawyer to be protected under the attorney-client privilege. [D.E. 73]. See, e.g. , In re Denture Cream Products Liab. Litig. , 2012 WL 5057844, at *13 (S.D. Fla. Oct. 18, 2012) ("[S]imply because a communication is made between two corporate *1235 employees, neither of whom are attorneys, that fact is not determinative of whether that communication primarily involves business advice rather than legal advice for purposes of the attorney-client privilege to that correspondence."). Defendants concede that not every communication on their privilege log constitutes the proffering of legal advice. But, Defendants believe that this is immaterial because the decision in Southern Bell Tel. & Tel. Co. did not hold that a communication must contain actual legal advice. Instead, Defendants claim that a communication must relate to legal services being rendered. See Southern Bell Tel. & Tel. Co. , 632 So.2d at 1383 (stating that the content of the communication must relate to the legal services being rendered).
Defendants also suggest that, if the attorney-client privilege only applies to communications sent to and from attorneys, it would eviscerate one of the legal profession's oldest protections. See Eutectic Corp. v. Metco, Inc. , 61 F.R.D. 35, 38 (E.D.N.Y. 1973) (stating that "there is no requirement that, in a strict sense, the attorney or his representative must be either the sender or recipient of a confidential communication, but only that the communication, if made between representatives of the client, must be specifically for the purpose of obtaining legal services for the client."). For example, one of Defendants' employees, Dustin Sroufe, claims that his communications should be protected because he was following the directions of his attorneys and that the contents of his emails may reveal the substance of legal advice:
In my position, I am sometimes directed by my superiors to assist and work under the direction of the companies' lawyers to investigate, evaluate, and analyze the mechanical performance and functioning of various firearms at issue in disputes or lawsuits filed against my employer, which does not have lawyers in-house. In connection with these investigations, I sometimes direct the work of engineers under my leadership, or work with Forjas Taurus's engineers in Brazil.
[D.E. 74-3]. Because all of the documents identified on Defendants' privilege log relate to legal services being rendered, Defendants conclude that they have met their burden and that the items sought must be protected under the attorney-client privilege.
We agree with Defendants that the attorney-client privilege does not require an attorney's presence on a communication in order for the privilege to apply. As a general matter,
[S]imply because a communication is made between two corporate employees, neither of whom are attorneys, that fact is not determinative of whether that communication primarily involves business advice rather than legal advice for purposes of applying the attorney-client privilege to that correspondence. To conclude otherwise would result in a somewhat absurd finding that a document generated for purposes of obtaining and/or assisting in the transmission of legal advice would not only lose its privileged character, but would be artificially viewed as primarily a business communication merely because the author and recipient were not attorneys.
In re Denture Cream Products Liab. Litig., 2012 WL 5057844, at *13 (S.D. Fla. Oct. 18, 2012) ; see also In re Vioxx Products Liab. Litig., 501 F.Supp.2d 789, 811 (E.D. La. 2007) (finding that a privilege applies not only to communications between corporate employees and corporation's counsel, but also to communications among corporate employees discussing or transmitting counsel's advice);
*1236 Weeks v. Samsung Heavy Indus. Co., 1996 WL 341537, at *4 (N.D. Ill. June 20, 1996) ("A privileged communication does not lose its status as such when an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation. Management personnel should be able to discuss the legal advice rendered to them as agents of the corporation.") (internal citations omitted).
This means that the lack of attorneys on either side of an otherwise confidential corporate communication is not fatal to a claim of privilege. However, the lack of any lawyer involvement can still be a "factor tending to weigh against Defendants in showing the privileged nature of that communication." United States v. Davita, Inc. , 301 F.R.D. 676, 682 (N.D. Ga. 2014). "The ultimate touchstone for application of the privilege ... is whether the communication revealed advice from, or a request for advice made to, an attorney in some fashion." Id.
By the same token, a communication is not necessarily privileged simply because a lawyer is copied. As the proponent of the privilege, Defendants must show, irrespective of whether one or more lawyers sent or received the communication, that the communication was confidential and that the primary purpose of the communication was to relay, request or transmit legal advice. See, e.g., U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Cen., 2012 WL 5415108, at *4 (M.D. Fla. Nov. 6, 2012). Thus, "[w]here a lawyer provides non-legal business advice, the communication is not privileged." Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3rd Cir. 2007). Because the attorney-client privilege only applies to communications made in confidence, a communication loses its protection if made in the presence of third parties, or disseminated beyond the group of corporate employees "who have a need to know in the scope of their corporate responsibilities." In re Vioxx, 501 F.Supp.2d at 796.
Plaintiff is correct that Defendants' prior privilege log contains conclusory descriptions of some of the withheld documents. But the day after Plaintiffs filed their motion to compel, Defendants (1) amended their privilege log to provide better descriptions of the privileged communications, and (2) removed several documents in favor of their production. As the privilege log stands now, there are numerous documents that may or may not be protected under the attorney-client privilege. Only an in camera inspection will be able to resolve the parties' dispute on whether the attorney-client privilege applies to the email communications, memos, and other forms of correspondence on Defendants' privilege log. Therefore, in abundance of caution and to safeguard one of the legal profession's oldest protections between a lawyer and client, Defendants shall produce to the Court all forms of correspondence on their privilege log for an in camera inspection. This will allow the Court to determine whether the materials fall within the confines of the attorney-client privilege.
As to Defendants' engineering reports, photos, and videos, we are unconvinced that these items fall within the confines of the attorney-client privilege. Defendants suggest on their privilege log that the information cannot be disclosed because it was ultimately sent to their attorneys. But, as the proponent of the privilege, Defendants failed to carry their burden of establishing that it applies to these items. Defendants also failed to rebut Plaintiffs' argument that these items contain nothing more than mere technical information. Indeed, there is no suggestion that "[t]hese test results and other technical information, taken by themselves, are clearly not privileged."
*1237 Champion Int'l Corp. v. Int'l Paper Co. , 486 F.Supp. 1328, 1331 (N.D. Ga. 1980).
Moreover, the fact that these items may have been sent to Defendants' attorneys does not make them privileged. See id. ("That the test results were sent to plaintiff's attorney cannot make them privileged"). Defendants appear to rely on a common misconception about the attorney-client privilege, which is the "belief that if a document or draft has been through the hands of an attorney, it thereby automatically becomes enshrouded in privilege's veil of secrecy." In re Seroquel Prod. Liab. Litig. , 2008 WL 1995058, at *7 (M.D. Fla. May 7, 2008). This is not the law because an attorney's tangential involvement would effectively immunize all documents relating to internal investigations. See id. ("[T]his 'collaborative effort' argument, if successful, would effectively immunize all internal communications of the drug industry, thereby defeating the broad discovery authorized in the Federal Rules of Civil Procedure.") (quoting In re Vioxx, 501 F.Supp.2d at 796 ).
Because Defendants (1) failed to present a viable argument on why their engineering reports, photos, and videos do not contain anything more than technical information, and (2) failed to carry their burden in showing how the attorney-client privilege applies to these items, we conclude that they must be produced. See, e.g. , Zoller v. Conoco, Inc. , 137 F.R.D. at 10 ("The court fails to understand why these photographs contain confidential information or reflect the advice of an attorney."); NXP B.V. v. Research in Motion, Ltd. , 2013 WL 12158602, at *2 (M.D. Fla. Mar. 14, 2013) ("Technical information is not confidential."). Accordingly, Plaintiffs' motion to compel Defendants to produce their engineering reports, photos, and videos is GRANTED . Defendants shall produce these items to Plaintiffs within fourteen (14) days from the date of this Order. As for the remaining items on Defendants' privilege log, Defendants are compelled to produce these materials to the Court for an in camera review.[4]
III. CONCLUSION
For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that Plaintiffs' motion to compel is GRANTED in part and DENIED in part :
A. Plaintiffs' motion to compel Defendants to produce their engineering reports, photos, videos, and other technical documents is GRANTED . Defendants shall produce these items to Plaintiffs within fourteen (14) days from the date of this Order.
B. Plaintiffs' motion to compel Defendants to produce to the Court all remaining items on Defendants' privilege log for an in camera review is GRANTED . Defendants shall produce these items to the Court within fourteen (14) days from the date of this Order. After the in camera review is completed, a separate Order shall follow.
C. Plaintiffs' motion to compel all documents on Defendants' privilege log, absent an in camera review, is DENIED .
DONE AND ORDERED in Chambers at Miami, Florida, this 10th day of August, 2018.[5]

The in camera review will assess the applicability of both the work product doctrine and the attorney-client privilege for all remaining items on Defendants' privilege log that do not constitute engineering reports, photos, videos, or other technical documents.

Plaintiffs' motion for leave to file supplemental evidence in support of its motion to compel is DENIED as moot . [D.E. 85].