## HECHINGER INVESTMENT COMPANY OF DELAWARE, Debtor.

**Official Committee of Unsecured Creditors of Hechinger Investment Company of Delaware, Inc., on behalf of Hechinger Investment Company of Delaware, Inc. Plaintiff,**

**v.**

**Fleet Retail Finance Group, Chase, the Chase Manhattan Bank and Back Bay Capital Funding LLC, each individually and as agents for various banks party to credit agreements, John W. Hechinger, Leonard Green & Partners, L.P., Green Equity Investors II, L.P., John W. Hechinger, Jr., S. Ross Hechinger, Ann D. Jordan, Robert S. Parker, Melvin A. Wilmore, Alan J. Zakon, Kenneth J. Cort, W. Clark**

---

McClelland, June R. Hechinger, Nancy Hechinger Lowe, Sally Hechinger Rudoy, Catherine S. England, Richard England, Jr., June L.P., Lois Associates, L.P., and Jarsan Associates, L.P., Defendants

No. CIV.A.00–840–###(MPT).
Bankruptcy Nos. 99–2261(PJW) to 99–2283(PJW).

United States District Court, D. Delaware.

Oct. 31, 2002.

Mark David Collins, Richards, Layton & Finger, Wilmington, DE, Mark E. Felger,

Cozen & O'Connor, Wilmington, DE, for Hechinger Investment Co. of Delaware.

Mark Minuti, Saul Ewing, LLP, Wilmington, DE, for Official Committee of Unsecured Creditors of Hechinger Investment Co. of Delaware, Inc.

Teresa K.D. Currier, Klett, Rooney, Lieber & Schorling, Wilmington, DE, for Fleet Retail Finance Group.

Michael R. Lastowski, Duane Morris, LLP, Wilmington, DE, for Chase Manhattan Bank N.A.

Kenneth J. Nachbar, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for John W. Hechinger, John W. Hechinger, Jr., S. Ross Hechinger, Ann D. Jordan, Robert S. Parker, Melvin A. Wilmore, Alan J. Zakon, Kenneth J. Cort, W. Clark McClelland, June R. Hechinger, Nancy Hechinger Lowe, and Sally Hechinger Rudoy.

Stephen M. Miller, Morris, James, Hitchens & Williams, Wilmington, DE, for General Electric Capital Corp.

Regina A. Iorii, Ashby & Geddes, Wilmington, DE, for Leonard Green & Partners, L.P. and Green Equity Investors II, L.P.

Brendan L. Shannon, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Catherine S. England, Richard England, Jr., June, L.P., Lois Associates, L.P., and Jarsan Associates, L.P.

Anthony W. Clark, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE, for Kmart Corp.

### MEMORANDUM ORDER

THYNGE, United States Magistrate Judge.

**Proceedings**

This matter involves a dispute regarding privileged documents that has arisen be-

tween plaintiff, the Liquidating Trust ("Trust") of Hechinger Investment Company of Delaware, Inc. and each of its affiliated debtors (Debtors), the successor to the Official Committee of the Unsecured Creditors, and certain defendants and its counsel. *D.I. 167.* The defendants primarily involved in this dispute are the former directors, officers and shareholders of the Debtors (Hechinger Defendants) and their counsel Gibson, Dunn & Crutcher (GDC). Since the filing of this matter with the District Court, other defendants have joined in the fray. *See D.I. 174.* To understand the issues involved, some background is necessary.

## Background

Dennis Friedman and Barbara Becker (Attorneys), formerly of the firm of Chadbourne and Parke (Chadbourne), represented the Debtors in connection with the 1997 Transactions which are the subject of the adversary proceeding in this court. After the 1997 Transactions, Chadbourne continued representing the Debtors in a variety of matters, including defending the Debtors in litigation involving claims asserted by Hechinger's former shareholders (none of whom are presently defendants in the adversary proceeding). During the course of representation, Chadbourne created and received a number of documents relating to the 1997 Transactions, which plaintiff is presently seeking. Sometime thereafter, the Attorneys left Chadbourne and became members of GDC, who took possession of the documents sought.[1]

On June 11, 1999, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. In 2000, this adversary proceeding was brought. In April 2001, the former directors and officers of Hechinger, that is, the Hechinger Defendants, were added to the adversary proceeding.[2] Thereafter, on June 9, 2001, counsel for the Debtors wrote to the Attorneys of GDC requesting that all documents in the firm's and counsels' possession relating to their prior representation of the Debtors be turned over, relying on bankruptcy law, primarily, 11 U.S.C. § 542(e). On August 3, 2001, GDC refused to produce all the documents requested on the basis of attorney-client privilege and attorney work product. *See D.I. 201.*

The Bankruptcy Court entered an order on October 5, 2001, effective October 26, 2001, confirming the First Amended Plan of Liquidation of the Official Committee of Unsecured Creditors. Article 6.1 is titled, *Liquidated Trust* and according to Art. 6.1(b):

(b) **Transfers to Liquidation Trust.** On the Effective Date, the Debtors and Estates shall and shall be deemed to have transferred and/or assigned any and all assets of the Debtors and Estates as of the Effective Date, including, without limitation (iii) any and all other interests, rights, claims, defenses and causes of action of the Debtors or Estates, and other matters identified in Section 6.25 of this Plan, to the Liquidation Trust free and clear of all Claims. Liens and contractually imposed restrictions, except for the rights of Distribution afforded to the holders of Claims under this Plan.

---

1. GDC and its present clients dispute that Chadbourne, the Attorneys and subsequently, GDC only represented the Debtors (often referred to as Old Hechinger) during the 1997 Transactions and thereafter. Rather, they claim that the law firms and the Attorneys represented the Directors and Officers, that is, the present clients, as well.

2. Presently, the only claims remaining against the Hechinger Defendants center on breach of fiduciary duty.

A companion document, The Liquidation Trust Agreement, contains the following language:

WHEREAS, under the terms of the Plan, all cash and other property of the Debtors as of the Plan Effective Date will be transferred to and held by the Liquidation Trust created by this Agreement (the "Liquidation Trust") so that, among other things: (i) the Trust Assets (defined below) can be disposed of in an orderly and expeditious manner, including prosecution of the Litigation Claims; (ii) objections to claims can be pursued, and dispute claims can be resolved; and (iii) distributions can be made to the beneficiaries of the Liquidation Trust in accordance with the Plan . . . .

> 1.3 *Transfer of Trust Assets:* In accordance with the provisions of the Plan on the Effective Date, the Debtors and their Chapter 11 estates shall be deemed to have transferred, assigned and conveyed to the Liquidation Trustee any and all assets of the Debtors, including but not limited to the Litigation Claims (all such assets, together with income, proceeds, rents, offspring, products and profit therefrom, being the "Trust Assets"), to be held by the Liquidation Trustee in trust for the holders, from time to time, of Allowed Claims as and to the extent provided in the Plan . . . on the terms and subject to the conditions set forth herein and in the Plan . . . .

The Trust filed a motion pursuant to § 542(e) in the Bankruptcy Court to compel GDC to turn over privileged documents. During the hearing on March 22, 2002, Judge Walsh considered the arguments of only the Trust and GDC on this issue.[3] In response to those arguments, Judge Walsh commented that if the privilege could be waived in Bankruptcy Court, then it could also be waived in the District Court, and in such a circumstance, the only remaining question would be relevance. *D.I. 167, Ex. 7 at 8.* Regarding plaintiff's continued arguments about the application of § 542(e), Judge Walsh responded:

> Well, I guess I'm repeating myself, but if you have the authority to waive the privilege, it certainly seems to me that the District Court would have to recognize that in the adversary as I would if *that's the law* in this proceeding. (emphasis added).

*Id. at 9.*

Judge Walsh continued remarking that the "[A]ppropriate forum for this discovery is in the adversary case. And, I suggest you pursue that avenue *before* you pursue a motion seeking the turnover of the documents under 542." *Id.* (emphasis added). However, when asked if the bankruptcy motion could be stayed to allow plaintiff to make its request in the first instance to the District Court and then return to the Bankruptcy Court if that avenue was unsuccessful, Judge Walsh agreed to that arrangement. *Id.* Therefore, Judge Walsh referred the matter to this court (where the adversary proceeding was filed) since it was a discovery issue.

Thereafter, plaintiff brought the privilege documents issue to the attention of this court on May 7, 2002. Its filing included extensive argument regarding the application of § 542(e) to this issue. Defendants, who were not parties to this dispute in Bankruptcy Court, filed their

---

**3.** At that time, they were the only parties involved regarding production of the privileged documents.

response on May 14, 2002. *D.I. 174.* The Hechinger Defendants and GDC responded on June 3, 2002. *D.I. 201.*

**Plaintiff's Arguments:**

Plaintiff argues that it is entitled to documents currently in the possession of GDC on the following bases.[4]

Section 542(e) of the Bankruptcy Code mandates that GDC turnover all files in its possession relating to the Debtors since those files became the property of the Debtors' estates upon the filing of the Chapter 11 petitions. Relying on the Supreme Court's holding in *Commodity Futures Trading Comm. v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), plaintiff claims that only the Trust can assert or waive a privilege with respect to the documents withheld. Under *Weintraub,* former officers and directors of the debtor could not prevent the bankruptcy trustee from asserting or waiving the attorney-client privilege for communications preceding the bankruptcy. *See also, In re Bevill, Bresler & Schulman Asset Management Corp.,* 805 F.2d 120, 126 (3d Cir.1986). Therefore, pursuant to plaintiff's arguments, under *Weintraub* and *In re Bevill,* former officers and directors, such as the Hechinger Defendants, do not own, nor have standing in the context of this adversary proceeding, to assert the Debtors' attorney-client privilege to block the Trust's access to the documents.

According to plaintiff, there is no real dispute that Chadbourne represented only the Debtors as evidenced by the Debtors' corporate records and the billing records of Chadbourne. Under § 542(e), subject to any applicable privilege, after notice and a hearing, the court may order an attorney, who holds recorded information relating to the debtor's property or financial affairs, to turn over or disclose that material to the trustee. Further, under 11 U.S.C. § 541, all property rights of the pre-bankruptcy debtor are vested to the bankruptcy estate.

Plaintiff contends that GDC's arguments (as propounded in the Bankruptcy Court) should be rejected. According to plaintiff, the primary case relied upon by GDC, *Tekni–Plex, Inc. v. Meyner and Landis,* 89 N.Y.2d 123, 651 N.Y.S.2d 954, 674.-N.E.2d 663 (1996), a non-bankruptcy case applying New York law, is inapposite. *Tekni–Plex Inc.* addressed control of the attorney-client privilege with regard to a law firm, Meyner and Landis, who represented the seller (Tekni–Plex) and the seller's sole shareholder in a merger transaction with a buyer (TPAC) to form a new company (Newco). After the merger, Tekni–Plex ceased to exist and all of the sole shareholder's stock was cancelled. Litigation between Newco and the sole shareholder arose for breach of the warranties and representations in the relevant transaction documents. According to plaintiff, the court in *Tekni–Plex* held that because the individual sole shareholder and the company were indistinguishable, the company's pre-acquisition attorney-client privilege protected from disclosure information relating to the sale. Further, pivotal to that court's holding was an expressed agreement that the pre-sale company and the sole shareholder would retain a unity of interest post-transaction. In contrast, the 1997 Transactions in this matter were between the Debtors, as the client and Chadbourne, as counsel. Under plaintiff's analysis, there is no privilege between the

---

4. According to a recent privilege log filed on behalf of the Hechinger Defendants, there are approximately 38 documents in dispute, of which plaintiff contends show that only two pre-date the 1997 Transactions, and thereby, underscores plaintiff's right to these documents.

Hechinger Defendants and Chadbourne. As pointed out by plaintiff, the Hechinger Defendants did not make such representations and warranties nor assert or document a community of interest.

Further, *Tekni–Plex* is limited to disputes under New York law. Here, plaintiff argues, federal law, rather than state law, governs the questions of privilege because a motion to obtain turnover documents is under federal bankruptcy, and all claims asserted in this litigation arise from the court's federal question jurisdiction.

Moreover, under federal law, the privilege belongs solely to the Trust as evidenced by the terms of the Plan. According to plaintiff, GDC does not contest that the Trust now possesses the Debtors' right to privilege, but rather argues that the officers and directors (its clients) continue to possess the right to the attorney-client privilege for documents dated prior to the effective date of the 1997 Transactions, along with the Trust, despite the fact that after its consummation the Hechinger Defendants ceased to have any role or rights with respect to Hechinger. Relying on *Weintraub,* plaintiff emphasizes that in applying bankruptcy law, courts have uniformly decided that former managers have no continuing right to assert a privilege over the Debtor's documents.

Plaintiff refutes GDC's argument in the Bankruptcy Court submissions of the joint representation exception or joint defense privilege. As argued by plaintiff, Chadbourne's bills and the minutes of the Debtor's Board of Directors meetings reflect Chadbourne's representation of only the Debtors. Plaintiff's position is advanced by the absence of any disclosure of a conflict of interest by Chadbourne in the proxy statement governing the 1997 Transactions, which resulted in the cashing out of the directors and shareholders.

As pointed out by plaintiff, GDC and the Hechinger Defendants have the burden of proving a joint defense arrangement, which is only applicable when there is currently pending or a strong possibility of, litigation against both parties subject to a joint defense. Here, the documents in question relate to a business transaction and not litigation. Further, if any such privilege existed, it was terminated upon the commencement of this adversary proceeding. Under the case law, a subsequent controversy between the parties to a joint representation or joint defense privilege waives the privilege.

As a result, plaintiff requests that this court enter an order compelling GDC/Hechinger Defendants to immediately turn over the documents to the Trust. Since the Trust controls the privilege, plaintiff further requests that the documents not be produced to the other defendants unless and until the Trust waives the privilege.

**Hechinger Defendants' Argument:**

In its submission to the Bankruptcy Court, GDC argued that that court did not have subject matter jurisdiction over plaintiff's § 542 motion because the Plan had been confirmed and had become effective. *D.I. 167, Ex. 5.* GDC contends that postconfirmation, the Bankruptcy Court's jurisdiction is limited to proceedings that could affect Plan confirmation, which was neither in issue or at risk by plaintiff's motion, relying on *Diagnostic Int'l Inc. v. Aerobic Life Prods. Co.,* 257 B.R. 511 (Bankr.D.Ariz.2000). In that case, the Bankruptcy Court found that a turnover action under § 524 is extinguished because the estate ceases to exist once the court confirms the plan, even though the action was for turnover of estate property. In rejecting jurisdiction, the court determined that a post-confirmation turnover action was not a claim "arising under title 11, or arising in or related to cases under title

11." *Diagnostic International,* 257 B.R. at 514–16.[5]

GDC also contends that plaintiff's motion should be denied because the attorney-client privilege applicable to the documents belongs to the Hechinger Defendants and not the Trust. In its June 3, 2002 letter, *D.I. 201,* GDC notes that the applicability of § 542(e) is a threshold issue for this court. GDC emphasizes the instruction from Judge Walsh, contending that § 542 is inapplicable in this court and plaintiff should be seeking to compel the production of the documents pursuant to Fed.R.Civ.P. 37. Therefore, the only question for the court under Rule 37 is whether the documents remaining in GDC's possession are privileged. Accordingly, if they are, the motion to compel should be denied. If they are not, then the motion should be granted resulting in production to all parties and not just to the Trust.

In its responses, GDC distinguishes *Weintraub* from the present matter noting that it only held that a trustee succeeding to the management of a Chapter 11 debtor had the right to waive the attorney-client privilege with respect to pre-petition communications over any objection of the debtor's management. GDC contends that although the attorney-client privilege is held by the debtor in possession, or if appointed, by a trustee, the relevant documents concerned the representation by GDC of Old Hechinger and its former officers and directors. Since both the documents and the law firm involved are in New York, New York law applies. Under New York law, the attorney-client privilege regarding pre-merger representations concerning the merger transaction does not pass to the buyer, but remains with the former shareholders of the seller. *Tekni–Plex v. Meyner & Landis,* 89 N.Y.2d 123, 651 N.Y.S.2d 954, 674 N.E.2d 663, 672 (1996). Since certain of the Hechinger Defendants are alleged in the adversary proceeding to have been the controlling shareholders at the time of the merger, they then continue to control the attorney-client privilege regarding communications about the 1997 Transactions. Further, since GDC represented both the Hechinger Defendants and Old Hechinger in the 1997 Transactions, the advice provided is considered to have been provided pursuant to the joint representation defense. *In re Sealed Case,* 120 F.R.D. 66, 72 (N.D.Ill.1988). Hence, as co-defendants represented by the same counsel, neither the Hechinger Defendants nor the Trust may waive the attorney-client privilege without the other's consent. *D.I. 167, Ex. 5 at 5–8.*

GDC on behalf of the Hechinger Defendants further argues that even if § 542(e) is applicable, state law, rather than federal law, governs this dispute. Since state law governs plaintiff's fiduciary duty claims, then the questions regarding privilege are governed by state law. Under F.R.E. 501, in civil actions and proceedings, where to an element of a claim or defense state law applies the rule of decision, then the privilege is determined in accordance with state law. In an extensive footnote, GDC cites to various decisions which it argues as holding that state law controls whether, in

---

**5.** GDC also argued lack of personal jurisdiction by the Bankruptcy Court, an argument that no longer appears to have any bearing on the motion in the adversary proceeding. *See, D.I. 201.* Plaintiff has requested the documents from both GDC and their clients, the Hechinger Defendants. In its letter of June 3, 2002 to this court (*D.I. 201* ), GDC does not directly raise this issue. Clearly, its clients are subject to this court's jurisdiction, as evidenced by the various types of discovery they have participated in throughout the litigation. Therefore, this court will view the arguments raised by GDC in its submissions to the Bankruptcy Court and to this court as arguments on behalf of the Hechinger Defendants.

the bankruptcy context, a matter is privileged when it is relevant to a state law claim. *See D.I. 201, fn. 1* and the cases cited there.

As a result, GDC and the Hechinger Defendants contend that plaintiff's motion should be denied.

**Other Defendants' Arguments:**

Defendants, Fleet Retail Finance, Inc. (Fleet Retail) and Back Bay Capital Funding, LLC (Back Bay) interject themselves into this dispute to a limited extent. Although neither take a position regarding the argument between plaintiff and GDC, they do take a position regarding the waiver of the attorney-client privilege by plaintiff. Should plaintiff successfully establish that it has the authority to waive or assert the privilege, these defendants argue that plaintiff has waived the privilege by failing to prevent disclosure of the documents to the Hechinger Defendants, one of its adversaries in this proceeding. *D.I. 174.* In the same breath, these defendants also assert, that should the court find that neither the plaintiff nor GDC establish the existence of a privilege, the documents should be produced to all other parties in this litigation.

According to these defendants, if plaintiff owns the privilege, it then had the obligation to properly preserve the privilege and upon failing to do so, it has now waived the attorney-client privilege. Vital to the claim of privilege is, not only, that the communications were made in confidence, but also, that they have been maintained in confidence and, therefore, case law imposes upon the party asserting privilege to take "reasonable steps to insure and maintain its confidentiality," or run the risk of finding that the privilege does not apply or has been vitiated. *See, In re Grand Jury Subpoena Served Upon Simon Horowitz,* 482 F.2d 72, 81–82 (2nd Cir.1973); *Suburban Sew 'N Sweep v.*

*Swiss–Bernina, Inc.,* 91 F.R.D. 254, 258–261 (N.D.Ill.1981). Defendants maintain that since the Hechinger Defendants have had access to the documents from at least the beginning of the litigation, then plaintiff has waived or lost any attorney-client privilege that it had in these documents. In none of the submissions to date, has plaintiff described the efforts taken by it to protect the confidential or privileged nature of the documents.

Further, since the Hechinger Defendants have had access to the documents in question, it would be both unfair and prejudicial to grant plaintiff's requested relief without also ordering the disclosure to all co-defendants. Even if the privilege existed based on an alleged joint defense or a joint representation argument, the expectation of confidentiality would necessarily expire upon the commencement of this litigation. According to these defendants since, in general, disclosure to a third party of privileged material results in a waiver of the privilege, full disclosure is warranted. *Citing Bass Public Ltd. Co. v. Promus Companies,* 868 F.Supp. 615, 621 (S.D.N.Y.1994); *Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21, 29 (N.D.Ill. 1980); *In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974,* 406 F.Supp. 381, 386 (S.D.N.Y.1975).

**Discussion:**

The direct parties to this dispute primarily rely upon two cases: plaintiff emphasizes *Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), while GDC and the Hechinger Defendants draw the support for their arguments from *Tekni–Plex, Inc. v. Meyner & Landis,* 89 N.Y.2d 123, 651 N.Y.S.2d 954, 674 N.E.2d 663 (1996). In addition, *Diagnostic Int'l Inc. v. Aerobic Life Prod. Co.,* 257 B.R. 511 (Bankr.D.Ariz.2000) is cited by GDC and

610

the Hechinger Defendants for the premise that § 542(e) is not applicable.

*Weintraub* involved a granting of certiorari from an opinion of the Seventh Circuit appellate court, which reversed the lower court. In its opinion, the Supreme Court directed its attention to and distinguished between solvent and insolvent corporations in relation to the ownership of the attorney-client privilege. *Weintraub* involved the formal investigation by the petitioner of CDCB, a discount commodity brokerage house, of which the respondent, McGhee, was the sole director and officer. On the date the petitioner filed a complaint against CDCB, McGhee, acting in his official capacity, entered into a consent decree with the petitioner, which provided for the appointment of a receiver and for the receiver to file a petition for liquidation under Chapter 7. After the appointment of the receiver (Notz), the receiver filed for voluntary bankruptcy on behalf of the company. The Bankruptcy Court then appointed Notz as interim trustee, and later, as permanent trustee. During the investigation, petitioner served a subpoena duces tecum on CDCB's former counsel, Weintraub, seeking his testimony about various CDCB matters, including misappropriation of customer funds by CDCB's officers and employees. Although Weintraub appeared for his deposition, he raised attorney-client privilege to certain inquiries. The petitioner then moved to compel his testimony. Even though the petitioner had argued in its motion that no attorney-client privilege existed, it obtained a waiver from Notz of any attorney-client privilege possessed by the debtor for any and all communications before his appointment as receiver. A United States Magistrate Judge ordered Weintraub to testify. That order was upheld by the District Court and McGhee appealed from that court's order. The Court of Appeals reversed.

In its analysis, the Supreme Court noted that as an inanimate entity, a corporation can only act through its agents. Therefore, a corporation, itself, cannot directly waive or assert the privilege. Accordingly, any action, including the assertion or waiver of a privilege must necessarily be undertaken by those individuals empowered to act on its behalf. For solvent corporations, the power to waive attorney-client privilege for a corporation rests with corporate management, usually its officers and directors. Such individuals must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not for themselves. As noted by the Court, when the control of a corporation is passed to new management, the authority to assert and waive the corporation's attorney-client privilege also passes. As a result, those managers displaced may not assert or waive the privilege over the desires of the current managers, including for statements that the former made to counsel concerning matters within the scope of their corporate duties. *Id.* at 349, 105 S.Ct. 1986.

Commenting on the lack of direct guidance from the Bankruptcy Code, the Court turned its analysis to the roles by the various actors of a corporation in bankruptcy to "determine which is most analogous to the role played by the management of a solvent corporation." *Id.* at 380, 105 S.Ct. 1986.

When a bankruptcy occurs, all corporate property transfers to an estate represented by a trustee, who is then "accountable for all property received" and has the obligation to maximize the value of the estate. *See 11 U.S.C. § § 323, 541, 704(1) & (2), 1106(a)(1).* The trustee's obligations and duties include, but are not limited to, investigating the debtor's financial affairs, suing officers, directors and

other insiders to recover, on behalf of the estate, fraudulent and preferential transfers and operating the business under the supervision of the court. *See, 11 U.S.C. § § 547(b), 704, 721, 1106(a).* As a result, the Bankruptcy Code empowers the trustee with wide ranging management authority, while the powers of the debtor's directors are severely restricted. *See, 11 U.S.C. § § 521, 343.* Those directors' role in the bankruptcy setting is "to turn over the corporation's property to the trustee and to provide certain information to the trustee and to the creditors." *Weintraub,* 471 U.S. at 352, 105 S.Ct. 1986. In light of the aforementioned analysis, the Court determined that the trustee's role is "most analogous to that of a solvent corporation's management," and therefore, the right to assert or waive the attorney-client privilege of the debtor corporation rests with the trustee in a bankruptcy situation. In so finding, the Court rejected McGhee's arguments concerning § 542(e) and held that the legislative history clearly indicated that "Congress did not intend to give the debtor's directors the right to assert the corporation's attorney-client privilege against the trustee." *Id.* at 349, 105 S.Ct. 1986. The Court did recognize that nothing in the Code in general, and specifically nothing in § 542(e), was inconsistent with an attorney invoking the *personal* attorney-client privilege of an individual manager. *Id.* at 350, 105 S.Ct. 1986.

Respondent's economic discrimination argument—by preventing the debtor's directors from controlling the privilege somehow treats a solvent corporation differently from an insolvent one—was also rejected by the Court, which quoted:

> " 'Insolvency is a most important and material fact, not only with individuals

but with corporations, and with the latter as with the former the mere fact of its existence may change radically and materially its rights and obligations.' " *McDonald v. Williams,* 174 U.S. 397, 404, 19 S.Ct. 743, 43 L.Ed. 1022 (1899).

Therefore, *Weintraub* stands for the proposition that the power to exercise the attorney-client privilege in bankruptcy proceedings passes to the bankruptcy trustee. In reaching this conclusion, the Court did so without direct reliance upon § 542(e). Moreover, the Supreme Court recognized and accepted that the "difference" in treatment between a solvent corporation versus an insolvent corporation that is proceeding or has proceeded through bankruptcy regarding control over the attorney-client privilege was expected.

GDC and the Hechinger Defendants rely on *Tekni–Plex* to support their argument that ownership of the privilege rests with the officers and directors of the corporation based on merger law.[6] *Tekni–Plex* is clearly distinguishable from the present matter. First of all, the case does not deal with a bankruptcy situation. Secondly, despite GDC's and the Hechinger Defendants' arguments to the contrary, the court in *Tekni–Plex* clearly found the terms of the merger agreement relevant. In its opinion, the court emphasized that the merger agreement specifically carved out disputes arising from the merger transaction as remaining independent from, and in fact, adverse to the rights of the buyer. *Tekni–Plex,* 674 N.E.2d at 671–672. As noted by the court, the parties recognized "the community between the selling shareholder and his corporation and expressly provided that it be preserved in *any subsequent dispute regarding the acquisition.*" *Id.*

6. Refer to pp. 7, 10 of this memorandum order where the facts of this case have been previously discussed.

(emphasis added). The *Tekni–Plex* court did not address, since the facts did not call upon it to do so, the ownership of the attorney-client privilege regarding pre-merger information after completion of a merger transaction in the *absence* of such language. In fact, the analysis by the New York court, under the heading disqualification of counsel, and its decision that counsel should be disqualified in representing any party in the litigation, strongly suggests that, absent the parties' acknowledgment in the merger documents, the privilege transferred would have included the pre-merger information. Therefore, GDC's and the Hechinger Defendants' comment that "[t]he attorney-client privilege regarding pre-merger representations concerning the merger transaction does not pass to the buyer" is inaccurate.[7]

Further, GDC and the Hechinger Defendants, through their interpretation and application of *Tekni–Plex* to the present situation and by their claim that the Hechinger Defendants control the attorney-client privilege regarding the 1997 Transactions, seem to ignore that any bankruptcy proceeding occurred.

■ GDC and the Hechinger Defendants argue that a joint representation exception or a joint defense privilege applies. As noted in *Tekni–Plex,*

> Generally, where the same lawyer jointly represents two clients with respect to the same matter, the clients have no expectation that their confidences concerning the joint matter will remain secret from each other, and those confi-

dential communication are not within the privilege in subsequent adverse proceedings between the co-clients.

674 N.E.2d at 670.

Obviously under *Tekni–Plex,* once the Hechinger Defendants became parties to the adversary proceedings the expectation of any type of confidence that may have existed between them and plaintiff ended.

■ Moreover, the joint defense privilege does not appear to be applicable to this situation. This privilege arises out of a need for a common defense. It only applies to communications between actual or potential co-defendants and their attorney for any common defense purpose. further, at the time the communications were made, the parties must reasonably believe that the communications were intended to further the parties' joint defense. *United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir.1989); *Polycast Technology Corp. v. Uniroyal, Inc.* 125 F.R.D. 47, 50 (S.D.N.Y.1989). Therefore, GDC and the Hechinger Defendants must show that the documents were made in the course of a joint defense effort and were designed to further that effort, and that no waiver of the privilege has occurred. *In re Bevill, Bresler & Schulman Asset Management Corp.,* 805 F.2d 120, 126 (3d Cir.1986). The record before this court is absent of any such proof.

Further, neither GDC nor the Hechinger Defendants have suggested that any communications from the Hechinger Defendants to the Attorneys or from counsel to the Hechinger Defendants in relation to the 1997 Transactions involved communi-

---

7. Of interest is that the New York Court of Appeals during its analysis of the disqualification of counsel relied upon *Weintraub* for the proposition that successor management of a pre-existing business "stands in the shoes of prior management and, controls the attorney-client privilege", and therefore, the privilege passes to the newly formed entity. *Id.,* 674 N.E.2d at 668. The *Tekni–Plex* court distinguished between matters concerning the company's operations and communications relating to the merger negotiations solely due to the language of the merger agreement. *Id.,* 674 N.E.2d at 670–71.

cations that were personal to a Hechinger Defendant. Nor has there been any evidence presented showing that either Chadbourne or the Attorneys had represented any Hechinger Defendant individually regarding the 1997 Transactions.

Therefore, this court finds that there was no joint representation, that no personal or individual representation occurred and that the joint defense privilege is not applicable.

GDC's and the Hechinger Defendants argue that *Diagnostic International* answers the question of who controls the privilege and the applicability of § 542. This court finds GDC and the Hechinger Defendants' reliance on *Diagnostic International* to be misplaced.[8] Although that case addressed the application of 11 U.S.C. § 542 and a *reorganized* debtor's adversary claim under that provision in relation to a bankruptcy court's subject matter jurisdiction over the adversary proceeding, this court does not find § 542 particularly helpful to its analysis of who controls the attorney-client privilege regarding the 1997 Transactions' materials in light of *Weintraub*, and the Plan and Liquidation Trust documents.

As a result, this court finds that the Liquidating Trust controls the privilege and not the Hechinger Defendants.

The prior analysis only addresses who controls the privilege; it does not address what occurs after this determination.

■ Plaintiff argues under *Weintraub* and through § 542(e) that it not only is entitled to the "turnover" documents, but also has control over any privilege, and since it has not "waived" the privilege, production of any documents should be limited to it. As noted previously, this court did not decide control over any privilege involving the documents at issue based on § 542. Nor does this court find that § 542(e) pertinent to the issue of control, especially in light of its purpose. Section 542 merely requires an attorney, accountant or other professional who holds recorded information relating to the debtor's property or financial affairs to surrender those materials to the trustee. This obligation is subject to any applicable claim of privilege. The intent of this provision was to eliminate the leverage such professionals had under state law lien provisions to receive payment ahead of other creditors when the information in their possession was needed to administer the

---

**8.** *Diagnostic International* involved a bankruptcy court deciding whether it had subject matter jurisdiction under 11 U.S.C. § 1334(b) over the adversary proceeding where the claim by the reorganized debtor involved turnover of property of the estate. In finding that none of the provisions of § 1334(b) applied, the bankruptcy court held that once the court had confirmed the plan, a complaint for turnover ceased to exist since all estate property, not otherwise transferred under the plan, reverted back to the debtor. Therefore, once the plan was confirmed, there was neither a trustee nor an estate left to which the property may be returned. Hence, whether the court applied the "arising under", "arising in" or "related to" jurisdictional language, once the plan was confirmed and the case closed, the court no longer had jurisdic-

tion. Moreover, the court felt that it should not retain jurisdiction under the analysis applied by district courts in retaining jurisdiction over pendant state law claims after dismissal of the federal claims (that is, economy, convenience, fairness and comity). Some distinguishing features of *Diagnostic International* to the present matter include that the adversary proceeding was brought after the confirmation of the plan and was instituted by the reorganized debtor. Here, the adversary proceeding was commenced before the plan was confirmed, initially filed in the name of the unsecured creditors' committee whose litigation claims were transferred to the Liquidation Trust pursuant to Article VI of the Plan and the Liquidation Trust Agreement. *See, D.I. 167, Ex. 1 & 2*

estate. *See, H.R. Rep. No. 595, 95th Cong., 1st Sess. 369–370 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6325–6326; S. Rep. No. 989, 95th Cong., 2d Sess. 84 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5870.* The provision did not address who controlled the privilege and the extent to which the attorney-client privilege is valid against the trustee. *See, 124 Cong. Rec. H11097 (daily ed. Sept. 28, 1978); S17413 (daily ed. Oct. 6, 1978)* It clearly does not address waiver of any privilege or the loss of confidentiality.

■ The Third Circuit has held that waiver of the work product privilege occurs when a party delays in seeking a judicial determination regarding the privilege. *In re Grand Jury (Impounded),* 138 F.3d 978 (3d Cir.1998)(finding that a delay of 3½ months to file a motion to compel seeking return of documents waived the privilege). Although the court addressed the work product privilege, in analyzing the factors considered in determining whether a waiver occurred, the court relied upon decisions concerning the attorney client privilege. *Id.* at 981. Therefore, in determining whether a party has waived a privilege through inadvertence or involuntary disclosure, the factors considered are the steps taken by a party to remedy the disclosure and any delay in initiating those steps.[9] Where there has been an involuntary disclosure,[10]

> [A] reasonable person would not only inform his or her adversary of the breach of the privilege, but also would seek a judicial determination of the controversy if his or her adversary took an opposing stance. Merely asserting the privilege to an adversary is not sufficient to protect the privilege in these circumstances inasmuch as the adversary has possession of the materials claimed to be privileged and thus can make use of them.

138 F.3d at 982.

■ Therefore, essential to any claim of privilege is not only that the communications were made in confidence, but that they were also maintained in confi-

---

**9.** In *In re Grand Jury,* Capano, the target of a grand jury investigation, maintained a file in his law partner's office that contained notes of a time line of his whereabouts on a certain date and regarding his relationship with Mary Ann Fahey. Capano had prepared those notes at the direction of his attorney. Capano informed his partner of the location of the file. The law partner eventually read the file, but left the file on the bookshelf where Capano maintained it. The law office was subsequently searched and the file seized pursuant to a subpoena. Members of Capano's law firm were allowed to review the file after its seizure to determine if it contained any information relating to the firm's representation of clients. Within six days after the seizure, Capano's counsel wrote to the government demanding the return of the file since it contained privileged information. The government responded 14 days later, refusing on the basis that no attorney-client or work product privilege attached to the file's contents. Over the next 3 months, the government and Capano's lawyers discussed the applicability of the work product and attorney-client privileges to the seized documents. Another letter was sent by Capano's counsel requesting return of the file approximately 2 months after the prosecutor's first response. The government formally denied production about a month after Capano's lawyer's second letter. Two weeks after the second refusal, Capano's attorney filed a motion to compel. Noting that Capano had timely invoked the privileges, the Third Circuit agreed with the lower court that his continued assertions in subsequent communications were insufficient to protect his rights since the government was free to continue to utilize the documents, thereby negating their confidentiality.

**10.** Although plaintiff has not suggested that disclosure to GDC or the Hechinger Defendants was either inadvertent or involuntary, the only other option was that it was purposeful, which, obviously, plaintiff is not contending.

dence. *In re Grand Jury Subpoena Served Upon Simon Horowitz,* 482 F.2d 72, 81–82 (2d Cir.1973). In this matter, the adversary proceeding was filed in 2000, with the Hechinger Defendants, represented by GCD, being added in April 2001. As of that date, the Debtors/Trust's interests were clearly adversarial to those of the Hechinger Defendants. On July 9, 2001, approximately 3 months later, counsel for the Debtors requested by letter for GDC to turn over all documents in its possession, custody or control relating to its prior representation of the Debtors. GDC refused on the basis of privilege on August 3, 2001. Two months later, on October 18, 2001, the Trust served a request for production of the documents on the Hechinger Defendants. In February 2002, those defendants responded to the request, but refused to produce certain documents on the basis of privilege. Also, in February 2002, the Trust filed a motion in Bankruptcy Court seeking an order to compel GDC to turn over the documents. Finally, on May 7, 2002, the Trust brought the issue to this court's attention. Apparently, throughout the period between April 2001 and February 2002, the Debtors/Trust (plaintiffs to the adversary proceeding) maintained that they had a right to those documents and that only they had the right to raise any privilege. Moreover, they were aware during that time that the Hechinger Defendants had raised a claim of privilege in the same documents adverse to plaintiffs' claim. Evidentially, at no time prior to July 2001 did the Debtors/Trust ever assert any right or interest in the documents, nor any privilege associated with them, despite the bankruptcy filing in June 1999 and the apparent adverse relationship with the Hechinger Defendants unquestionably by April 2001. Yet, plaintiff waited until February 2002 to seek court intervention.

Under this scenario, clearly plaintiff's efforts to preserve any privilege have been inadequate, and any privilege has been waived. *In re Grand Jury (Impounded),* 138 F.3d 978 (3d Cir.1998); *Suburban Sew 'N Sweep, Inc. v. Swiss–Bernina, Inc.,* 91 F.R.D. 254 (N.D.Ill.1981). Therefore,

IT IS ORDERED that the Hechinger Defendants and /or their counsel shall produce the files in issue in plaintiff's letter motion (D.I. 167) to all parties in this litigation on or before November 21, 2002.