In re BEHR DAYTON THERMAL PRODUCTS, LLC.

No. 3:08–cv–326.

United States District Court,
S.D. Ohio,
Western Division,
at Dayton.

Signed Feb. 28, 2014.

Caroline Gentry, Porter Wright Morris & Arthur, Dayton, OH, Daniel E. Izenson, Keating Muething & Klekamp, Cincinnati, OH, Jeremy David Lockhart, Khalilah Vonn Spencer, Nicholas B. Gorga, Norman C. Ankers, Honigman, Miller, Schwartz and Cohn LLP, Detroit, MI, John W. Rogers, Thompson Coburn LLP, St. Louis, MO, Anthony R. McClure, Christopher Richard Schraff, James A. King, Porter Wright Morris & Arthur, Columbus, OH, for Behr Dayton Thermal Products, LLC.

## ORDER DENYING OLD CARCO'S MOTION FOR A PROTECTIVE ORDER (DOC. 203)

MICHAEL J. NEWMAN, United States Magistrate Judge.

Now before the Court is Nominal Defendant Old Carco LLC's Motion for a Protective Order (doc. 203) and memorandum in support (doc. 204), Plaintiffs' memorandum in opposition (doc. 206), Old Carco's reply (doc. 207), and Plaintiffs' surreply, filed with leave of Court (doc. 208). Old Carco seeks a Protective Order to prevent disclosure of fifty-eight documents on the basis that they are privileged under the attorney-client privilege and/or as attorney work product. The Court previously heard oral argument from all parties, and ordered briefing of the issues presented. Afterwards, the Court ordered that the documents at issue be produced for *in camera* inspection, doc. 210, and conducted such a review.

### I.

Plaintiffs bring several state law claims against various Defendants arising from the alleged contamination of Plaintiffs' properties with chemicals emanating from 1600 Webster Street, Dayton, Ohio (the "Behr Facility"). Doc. 149 at PageID 2013. The case is currently in the class certification discovery phase.

Old Carco, then known as Chrysler LLC, owned the Behr Facility from 1937–2002, at which point it was sold to Defendant Behr. Doc. 201 at PageID 3087. Old Carco holds a pollution liability insurance policy underwritten by American International Specialty Lines Insurance Company that covers the site. Doc. 207 at PageID 3352, 3363–76. That policy is the basis for Old Carco's involvement in this case.

## A. Bankruptcy

On April 30, 2009, Chrysler LLC and twenty-four of its subsidiaries (collectively "Old Chrysler") filed a voluntary Chapter 11 petition for relief in the United States Bankruptcy Court for the Southern District of New York. *In re Old Carco LLC,* No. 09–bk–50002 (Bankr.S.D.N.Y.).

Old Chrysler entered into a Master Transaction Agreement ("MTA") with Fiat S.p.A. and its newly-created subsidiary New CarCo Acquisition LLC dated April 30, 2009. *In re Chrysler LLC,* 405 B.R. 84, 92 (Bankr. S.D.N.Y.), *aff'd,* 576 F.3d 108 (2d Cir.), *appeal vacated as moot sub. nom. Ind. State Police Pension Tr. v. Chrysler LLC,* 558 U.S. 1087, 130 S.Ct. 1015, 175 L.Ed.2d 614 (2009). Pursuant to the MTA, Old Chrysler transferred "substantially all of its operating assets" to New CarCo in exchange for $2 billion in cash and New CarCo's assumption of various liabilities. *See id.* The MTA specifically exempted from the assets transferred the insurance policy that provides the basis for Old Carco's status in this case as nominal defendant and also exempted environmental liability for the Behr Facility. MTA at 8, 10. The Bankruptcy Court approved the MTA in an opinion issued May 31, 2009, and entered an Order approving the sale on June 1, 2009. Bankr.Doc. 3232. The MTA closed on June 10, 2009. *In re Old Carco LLC,* 406 B.R. 180, 196 (Bankr.S.D.N.Y.2009).

After the MTA was finalized, the companies changed their names to the current versions. New CarCo became Chrysler Group LLC ("New Chrysler"). *See* Certificate of Amendment of the Certificate of Formation of New CarCo Acquisition LLC, *available at* http://www.sec.gov/Archives/edgar/data/1513153/000119312511047098/dex31.htm (last visited Feb. 28, 2014). Chrysler LLC became Old Carco LLC. *See* Bankr.Doc. 3895 (amended list of debtors); Bankr.Doc. 3897 (notice of change of caption).

On April 23, 2010, the Bankruptcy Court entered an Order (the "Confirmation Order"), which confirmed the Second Amended Joint Plan of Liquidation of Debtors and Debtors in Possession, As Modified (the "Plan"). Doc. 206–2 at PageID 3246–76; *see also In re Old Carco LLC,* 435 B.R. 169, 174

(Bankr.S.D.N.Y.2010). The Plan became effective on April 30, 2010. *In re Old Carco,* 435 B.R. at 174. Pursuant to the Confirmation Order and the Plan, Old Carco was dissolved on April 30, 2010. Doc. 122 at PageID 1598–99; Doc. 206–2 at PageID 3269. Specifically, the Confirmation Order provided that "[t]he Debtors are liquidating, and the Original Debtors will cease to exist pursuant to the Plan. The Original Debtors will have no officers, managers, directors or trustees after the Effective Date." Doc. 122–1 at PageID 1617; *see also id.* at PageID 1609 ("The Original Debtors [Old Carco and subsidiaries] are liquidating, will cease to exist (subject to the Restructuring Transactions) and will no longer have directors, managers, officers or trustees after [April 30, 2010]"). The Plan further provided that "the Debtors will be deemed dissolved and their business operations withdrawn for all purposes without any necessity of filing any document, taking any further action or making any payment to any governmental authority in connection therewith." Doc. 206–2 at PageID 3269; *see also id.* at PageID 3275 ("[T]he Debtors will cease to exist, and all existing certificates of incorporation and by-laws, articles of organization, limited liability company agreements or similar organizational documents will be cancelled, as of the Effective Date").

With the directors, managers, and officers of Old Carco removed, a Liquidation Trust was created to administer the estate and implement the Plan. *See id.* at PageID 3270. The Confirmation Order and the Plan established this Liquidation Trust, operated by the Liquidation Trustee, RJM I, LLC, and governed by the terms of the Liquidation Trust Agreement. Doc. 122–1 at PageID 1608, 1634; Doc. 206–2 at PageID 3326. "[T]he Plan provides for the transfer of all remaining assets in the Debtors' Estates to the Liquidation Trust and the creation of the Liquidation Trust to effectuate the orderly liquidation and winddown of all assets contributed thereto and the distribution of any proceeds thereof to creditors in accordance with the Plan." Doc. 122–1 at PageID 1610. As stated by the Bankruptcy Court, "Old Carco Liquidation Trust became the succes-

sor to the Debtor [Old Carco]." *In re Old Carco LLC*, No. 09–bk–50002, 2013 WL 1856299, at *1 (Bankr.S.D.N.Y. May 2, 2013).

A separate Liquidation Trust Agreement was created to specify the establishment and operation of the Liquidation Trust. Doc. 206–2 at PageID 3277–3338. The Plan empowered the Liquidation Trust to:

> take such actions as are necessary, appropriate or desirable to cause the transfer of any attorney-client privilege, work-product privilege or other privilege or immunity of the Debtors attaching to any documents or communications (whether written or oral) to the Liquidation Trust (which privileges and immunities are transferred to the Liquidation Trust).

Doc. 206–2 at PageID 3271. Further, the Liquidation Trust Agreement provided:

> The Debtors shall transfer, assign and deliver to the Liquidation Trust, without waiver, all of their respective rights, title and interests in and to any attorney-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) associated with the Liquidation Trust Assets and the Claims of Beneficiaries which shall vest in the Liquidation Trust and the Liquidation Trustee, in trust, and, consistent with section 1123(b)(3)(B) of the Bankruptcy Code, for the benefit of the Beneficiaries....

Doc. 206–2 at PageID 3292.

The Confirmation Order and the Plan also authorized a Litigation Manager to prosecute the Daimler Litigation on behalf of the Liquidation Trust. The Plan provided that "the Daimler Litigation shall be assigned to the Liquidation Trust," but that "the Litigation Manager, on behalf of the Liquidation Trust, will prosecute to conclusion or settle the Daimler Litigation." Doc. 206–2 at PageID 3263; *see also id.* at PageID 3316 ("The Liquidation Trustee acknowledges that the Litigation Manager will have the exclusive authority to manage, prosecute to conclusion or settle the Daimler Litigation on behalf of the Liquidation Trust, subject to and as provided in the Plan and the Litigation Manager Agreement"). As made clear in the Confirmation Order, the Plan, and the Litigation Manager Agreement, the Litigation Manager was empowered to act on behalf of the Liquidation Trust. It was not a separate trust.[1]

The Confirmation Order modified the injunction to permit the commencement or continuance of certain categories of lawsuits. As relevant here, lawsuits were expressly authorized against Old Carco's insurers and in connection "to name one or more of the Debtors as nominal defendants, with the naming of such nominal defendants and such Insurance Litigation being solely for the purpose of pursuing claims against and collection of payment of proceeds under any such insurance." Doc. 122–1 at PageID 1639–40; Doc. 206–3 at PageID 3347–48. The Plan provided that the modification of the injunction to permit the instant lawsuit did not authorize this Court or any party to "compel the appearance or testimony ... or otherwise compel the Liquidation Trust's employees, officers managers, agents or other Representatives or counsel (in their capacities as such) to participate in the Insurance Litigation." Doc. 122–1 at PageID 1640.

Although the Litigation Trust cannot be compelled to appear in other litigation, it is empowered by the Plan and the Liquidation Trust Agreement to "appear and participate in any proceeding before the Bankruptcy Court or any other court with respect to any matter regarding or relating to the Plan, the Winddown Orders, this Agreement, the Litigation Manager Agreement, the Liquidation Trust, the Liquidation Trust Assets or the Debtors," and may "sue, defend and participate, as a party or otherwise, in any judicial,

---

1. The Litigation Manager Agreement also contained a provision governing the transfer of the attorney-client privilege:

> The Litigation Manager will take such actions, on behalf of the Liquidation Trust, that it determines to be necessary, appropriate or desirable with respect to any attorney-client privilege, work-product privilege or other privilege or

immunity of the Debtors or the Litigation Trust attaching to any documents or communications (whether written or oral) related to the Daimler Litigation, and the Liquidation Trustee will cooperate with the Litigation Manager and Contingency Fee Counsel in connection therewith.

X.A.147 at 9, article 7.2

administrative, arbitrative or other proceeding relating to the Plan, the Winddown Orders, the Liquidation Trust Agreement, the Litigation Manager Agreement, the Liquidation Trust, the Liquidation Trust Assets and/or the Debtors." Doc. 206–2 at PageID 3271–72, 3313. In essence, this means that while the Liquidation Trust cannot be compelled to appear in any other litigation, it is free to appear on its own if it so chooses.

As specifically empowered by the Plan, the Liquidation Trust, "as successor in interest to Old Carco," and the EPA entered into a settlement agreement on July 14, 2010 regarding potential environmental liabilities arising under CERCLA at the Behr Facility. Bankr.Doc. 7268. The Bankruptcy Court approved the settlement agreement on October 21, 2010. Bankr.Doc. 7553.

This Court ordered that this case be stayed on May 6, 2009 pending resolution of the bankruptcy case. Doc. 74 at PageID 1052. The Court lifted the stay on April 14, 2011 as to all Defendants except Old Carco. Doc. 92 at PageID 1118. On January 31, 2012, the Liquidation Trust made an appearance in the instant case to file a notice of plan injunction, seeking to clarify that Old Carco could only be named as a nominal defendant. Doc. 122. The notice provided:

> the Liquidation Trust files this Notice of Plan Injunction out of an abundance of caution to reiterate that the Plan Injunction prohibits the continuation of the Class Actions against the Liquidation Trust (as successor in interest to Old Carco and Old Carco Motors) in any capacity other than as a nominal defendant for the sole purpose of pursuing applicable insurance.

Doc. 122 at PageID 1602. The Liquidation Trust has not subsequently participated in this lawsuit in any manner beyond this notice.

Pursuant to the terms of the Confirmation Order, Old Carco was named as a nominal Defendant in Plaintiffs' second amended class action complaint "solely for the purpose of allowing plaintiffs to pursue any applicable insurance policies." Doc. 149 at PageID 2012.

Old Carco entered its appearance as a nominal defendant and filed its Answer on June 17, 2013. Doc. 201. As made explicit in its Answer, "Old Carco is participating in this matter solely as a nominal defendant and all actions involving Old Carco are subject to the Bankruptcy Action, and the terms of the Confirmation Order and the Liquidating Plan." Doc. 201 at PageID 3086.

### B. Protective Order Background

On April 4, 2013, Mr. Gregory Rose was deposed by Plaintiffs. Doc. 203 at PageID 3160. Rose was previously employed by Old Chrysler and is currently employed by New Chrysler. Doc. 204 at 2; doc. 206 at 2. During the deposition, Mr. Rose testified that certain documents created by Old Chrysler, regarding the Behr Facility, were now held by New Chrysler. Doc. 204 at PageID 3197–3200.

On April 5, 2013, Plaintiffs obtained a *subpoena duces tecum* from the United States District Court for the Eastern District of Michigan pursuant to Fed.R.Civ.P. 45(c), directing New Chrysler to produce the documents alluded to by Rose. Doc. 203–1. In response, New Chrysler produced to Plaintiffs certain documents that were responsive to the subpoena. Doc. 204 at 5; doc. 206 at 3. Additionally, New Chrysler sent other documents in its possession to counsel for Old Carco that were responsive to the subpoena but that New Chrysler believed Old Carco could find privileged. Doc. 204 at PageID 3200. Thereafter, on June 19, 2013, counsel for Old Carco sent a privilege log to Plaintiffs' counsel asserting attorney-client and work-product privilege. Doc. 203 at PageID 3160.

The parties were unable to resolve the dispute through extrajudicial means, *see* doc. 203–3; doc. 204 at PageID 3200, and an informal discovery conference was held with the Court thereafter, pursuant to S.D. Ohio Civ. R. 37.1, during which time the Court ordered the parties to brief the issue. Old Carco filed the instant motion for Protective Order thereafter, seeking a Protective Order pursuant to Fed.R.Civ.P. 26(c). Doc. 203.

The Court held oral argument on October 4, 2013. The Court thereafter ordered an *in*

*camera* inspection of the documents on October 7, 2013. Doc. 210.

## II.

█ Both sides agree, as does the Court, that this Court has jurisdiction over this dispute, notwithstanding that the *subpoena duces tecum* was issued by another Court. Doc. 204 at PageID 3201–03; doc. 207 at PageID 3351. Old Carco seeks a Protective Order pursuant to Fed.R.Civ.P. 26(c); it does not seek to modify or quash the *subpoena* under Fed.R.Civ.P. 45.[2] This Court has the jurisdiction over such a motion because it implicates broader issues of the proper scope of discovery. *See Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C.2001).

## III.

█ Both sides rely on the Supreme Court's opinion in *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). In *Weintraub*, the Supreme Court examined the attorney-client privilege when the client is a corporation. *Id.* at 349, 105 S.Ct. 1986. For a solvent corporation, the attorney-client privilege is controlled by the corporation's management, namely its officers and directors, who must act in conformance with their fiduciary duty to the corporation. *Id.* at 348–49, 105 S.Ct. 1986. When control of the corporation passes to new management by takeover, merger, or normal succession, the new managers control the privilege and may waive it as to communications made by the former managers. *Id.* at 349, 105 S.Ct. 1986. Former managers have no power to assert the privilege, even as to communications they were involved in, because the privilege may only be exercised by those who control the corporation. *Id.*

█ The Supreme Court in *Weintraub* was faced with the issue of who controls the privilege of a corporation in bankruptcy. The Court noted that when a corporation enters bankruptcy, the "debtor's directors retain virtually no management powers, [so] they should not exercise the traditional management function of controlling the corporation's attorney-client privilege." *Id.* at 353, 105 S.Ct. 1986. When a corporation is in bankruptcy, the trustee fills the role most analogous to management of a solvent corporation. *Id.* at 352–53, 105 S.Ct. 1986. The Supreme Court held that "the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications." *Id.* at 358, 105 S.Ct. 1986.

In *Am. Int'l Specialty Lines Ins. Co. v. NWI–I Inc.*, 240 F.R.D. 401 (N.D.Ill.2007), an insurance company brought suit seeking a declaratory judgment regarding its liability under a pollution legal liability insurance policy that was issued to a corporation that later went through Chapter 11 bankruptcy reorganization. *Id.* at 403. The debtor corporation, Old FTL, filed for Chapter 11 protection and its assets were transferred to six successor entities. *Id.* A new corporation was created, known as New FTL, and purchased "substantially all" of Old FTL's assets and continued to operate its old business. *Id.* at 403 & n. 1. The properties that were allegedly covered by the insurance policy were transferred to a Custodial Trust, which was created solely to manage and administer those properties. *Id.* at 403. A Successor Liquidation Trust was also created to hold assets for the purpose of funding the Custodial Trust. Old FTL reorganized as a wholly-owned subsidiary of the Successor Liquidation Trust and became known as NWI–I. *Id.* The Successor Liquidation Trust became the legal successor to the insurance policy at issue in the case. *Id.* Both the Successor Liquidation Trust and the Custodial Trust were created pursuant to trust agreements, which contained provisions that purported to transfer the attorney-client privilege and work-product privilege attached to documents associated with assets transferred to the respective trusts. *Id.* at 403–04.

---

**2.** Rule 45 was amended effective December 1, 2013, after the instant motion was filed. The Court need not determine which version of Rule 45 applies here because the Court concludes it has jurisdiction under both versions. *See Monte H. Greenawalt Revocable Trust v. Brown*, No. 2:12–cv–1983, 2013 WL 6844760, at *2–3 (D.Nev. Dec. 19, 2013).

When faced, as here, with a discovery issue concerning the attorney-client privilege, the Court held that only New FTL could assert the privilege, notwithstanding the terms of the trust agreements that purported to transfer the privilege. *Id.* at 406–07. The Court examined the "practical consequences" of the "multiple transactions" that resulted in Old FTL's assets beings transferred to "multiple successor entities," and found that control of Old FTL transferred to New FTL. *Id.* New FTL controlled Old FTL's business operations because it purchased "substantially all" of Old FTL's assets, so only it could control the attorney-client privilege. *Id.* The Court was loath to "allocat[e] the attorney-client privilege based on the division of a debtor's assets to multiple successor entities," so the two trusts and the reorganized debtor were found unable to assert the privilege. *Id.* at 407–08.

In *Flag Telecom,* the debtor corporation filed a Chapter 11 petition and, pursuant to the Reorganization Plan, a new entity emerged to which was transferred substantially all of the debtor's assets. *Rahl v. Bande (In re Flag Telecom Holdings, Ltd.),* No. 02–cv–3400, No. 04–cv1019, 2009 WL 5245734, at *1 (S.D.N.Y. Jan. 14, 2009). The Reorganization Plan also created a Litigation Trust to pursue pre-bankruptcy claims of the debtor, with a provision transferring control of the attorney-client privilege to the Trustee. The Court cited *Weintraub* but noted two facts that distinguished it:

> The First is that, in *Weintraub,* there was no language in the bankruptcy trust agreement that specifically addressed the attorney-client privilege; in the case at bar, specific language in the Litigation Trust assigned the attorney-client privilege to the trustee. The *Weintraub* holding did not indicate whether the general rule enunciated therein should overcome a contrary provision agreed upon by the parties and so ordered by the Bankruptcy Court.
>
> The second issue is that, unlike *Weintraub,* where there was no successor entity to the bankrupt company, here the Reorganization Plan provides for a successor entity. In *Weintraub,* the Court weighed only whether a defunct, bankrupt entity

should hold the attorney-client privilege or whether the trustee should hold the privilege. In this case, both a successor entity (FTGL) and a Litigation Trust exist and both are solvent, viable entities, each with distinct duties.

*Id.* at *7.

The Court then analyzed and distinguished the holding in *American International.* The Court noted that *American International* involved a much more complex procedural history whereby "Old FTL reorganized into six successor entities, each of which received or assumed multiple assets and liabilities and at least two of which received purported grants of power to assert or waive attorney-client privileges." *Id.* at *8–9. In *Flag Telecom,* only two entities emerged from bankruptcy. *Id.* at *8. The Court also noted that the nature of the non-bankruptcy litigation was relevant. In *American International,* the cause of action involved environmental liability; whereas, in *Flag Telecom,* the suit was brought by the Trust against the debtor's former officers and directors. *Id.* at *9.

The Court held that the provision transferring the attorney-client privilege to the Litigation Trust was valid, and that only the Litigation Trustee could exercise the privilege. *Id.* at *10. The Court rejected a rigid "control" analysis and noted that "while one successor entity may be deputized to carry on substantially all of the business of a precedent company, the precedent company's attorney-client privilege may be held by another entity pursuant to an analysis of assigned duties." *Id.*

In *Hechinger,* a case cited by Old Carco, the Court examined control of the attorney-client privilege after a corporation was liquidated through Chapter 11 proceedings. *Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del. v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.),* 285 B.R. 601, 604–05 (D.Del.2002). The Bankruptcy Court there entered an Order confirming a liquidation plan, pursuant to which the debtor transferred all of its assets to a Liquidating Trust. *Id.* The dispute arose in the context of an adversary proceeding brought by the Liquidating Trust against former officers and directors of the debtor

corporation stemming from their conduct in a pre-bankruptcy transaction. At issue were documents related to the transaction held by the debtor's attorneys. *Id.* at 605–06. The Court, relying on *Weintraub*, held that the Liquidating Trust controlled the privilege because the trustee filled the role of management when the corporation was in bankruptcy. *Id.* at 611–13; *see also Moecker v. Greenspoon (In re Lentek Int'l, Inc.)*, No. 6:03–bk–08035, No. 6:05–ap–190, 2006 WL 2987001, at *2 (Bankr.M.D.Fla. Sept. 12, 2006) ("The trustee of a liquidating trust, such as Moecker in this case, obtains the right to assert or to waive the debtor's claim of privilege upon appointment. As such, Moecker has the right to assert or to waive any claim of privilege the debtor, Lentek, previously held as to pre-bankruptcy communications" (citation omitted)).

## IV.

Old Carco does not cite, and the Court is unable to find, any case in which a liquidated and dissolved debtor corporation seeks to assert (or is entitled to assert) the attorney-client privilege. All the cases cited by Old Carco in its motion papers involve a dispute between extent entities, such as a trustee, a reorganized debtor, or a successor corporation. *See Am. Int'l,* 240 F.R.D. at 405 (reorganized debtor, two trusts, and successor corporation); *Flag Telecom Holdings,* 2009 WL 5245734, at *4 (liquidation trust and successor corporation); *In re Hardwood P–G, Inc.,* 403 B.R. 445, 455 (Bankr.W.D.Tex. 2009) (litigation trust and unsecured creditors' committee); *Hechinger,* 285 B.R. at 604–05 (liquidating trust and former directors in their individual capacities). The Court is unable to locate any precedent that even discusses whether a liquidated corporation may assert the privilege. *See Flag Telecom,* 2009 WL 5245734, at *7 (distinguishing the issue in *Weintraub* as involving a "defunct, bankrupt entity" from the facts it faced, which involved "solvent, viable entities").

Old Carco also admits that the "Liquidation Trustee may 'control' the privilege, but its only conduit to assert such privilege in this case is through Old Carco." Doc. 207 at PageID 3350–51. As an initial matter, the Court does not agree with Old Carco's contention that the Liquidation Trustee may only assert the privilege via Old Carco. The Liquidation Trustee made an appearance in this case to file a notification of the Plan injunction. Doc. 122. While the Plan prevents this Court from compelling the Liquidation Trustee to make an appearance, nothing prevents the Liquidation Trustee from again appearing here, this time to assert privilege itself. *See* doc. 206–2 at PageID 3271–72, 3313 (empowering the Liquidation Trust to "appear and participate in any proceeding before the Bankruptcy Court or any other court with respect to any matter regarding or relating to the Plan" and that it may "sue, defend and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding relating to the Plan"). Second, the Liquidation Trustee has provided no indication that it wishes to assert the privilege. Old Carco seeks to assert the privilege of its own volition, not as a "conduit" for the Trustee to act. *See* doc. 207 at PageID 3350–51.

The Court thus finds that Old Carco lacks standing to assert the attorney-client and/or work product privileges. Accordingly, Old Carco's motion for a Protective Order is **DENIED** on standing grounds. The Court affords the Liquidation Trustee—and any other party who arguably has standing to assert the privilege—**TEN DAYS** from the issuance of this Order (*i.e.,* on or before **March 10, 2014**) in which to raise objections to production of the documents here at issue or otherwise move for a Protective Order. If no such filing is made, the documents **SHALL** then be promptly produced to Plaintiffs.

**IT IS SO ORDERED.**